# GRIFFIN *v.* WISCONSIN

No. 86–5324.   Argued April 20, 1987—Decided June 26, 1987

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, POWELL, and O'CONNOR, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which MARSHALL, J., joined, in Parts I–B and I–C of which BRENNAN, J., joined, and in Part I–C of which STEVENS, J., joined, *post*, p. 881. STEVENS, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 890.

*Alan G. Habermehl*, by appointment of the Court, 479 U. S. 1053, argued the cause and filed briefs for petitioner.

*Barry M. Levenson*, Assistant Attorney General of Wisconsin, argued the cause for respondent. With him on the brief was *Donald J. Hanaway*, Attorney General.*

---

*\*Arthur Eisenberg* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

JUSTICE SCALIA delivered the opinion of the Court.

Petitioner Joseph Griffin, who was on probation, had his home searched by probation officers acting without a warrant. The officers found a gun that later served as the basis of Griffin's conviction of a state-law weapons offense. We granted certiorari, 479 U. S. 1005 (1986), to consider whether this search violated the Fourth Amendment.

I

On September 4, 1980, Griffin, who had previously been convicted of a felony, was convicted in Wisconsin state court of resisting arrest, disorderly conduct, and obstructing an officer. He was placed on probation.

Wisconsin law puts probationers in the legal custody of the State Department of Health and Social Services and renders them "subject . . . to . . . conditions set by the court and rules and regulations established by the department." Wis. Stat. § 973.10(1) (1985–1986). One of the Department's regulations permits any probation officer to search a proba-

---

Solicitor General Fried, Assistant Attorney General Weld, Deputy Solicitor General Bryson, Richard G. Taranto, and Kathleen A. Felton filed a brief for the United States as amicus curiae urging affirmance.

Briefs of amici curiae were filed for the State of California by John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Ronald E. Niver and Stan M. Helfman, Deputy Attorneys General; and for the State of New York et al. by Robert Abrams, Attorney General of New York, O. Peter Sherwood, Solicitor General, Lawrence S. Kahn, Deputy Solicitor General, Judith T. Kramer, Assistant Attorney General, Robert K. Corbin, Attorney General of Arizona, John J. Kelly, Chief State's Attorney of Connecticut, Charles M. Oberly III, Attorney General of Delaware, Robert A. Butterworth, Attorney General of Florida, James T. Jones, Attorney General of Idaho, Neil F. Hartigan, Attorney General of Illinois, Linley E. Pearson, Attorney General of Indiana, Frank J. Kelley, Attorney General of Michigan, Hubert H. Humphrey III, Attorney General of Minnesota, Stephen E. Merrill, Attorney General of New Hampshire, E. Cary Edwards, Attorney General of New Jersey, Lacy H. Thornburg, Attorney General of North Carolina, and T. Travis Medlock, Attorney General of South Carolina.

tioner's home without a warrant as long as his supervisor approves and as long as there are "reasonable grounds" to believe the presence of contraband—including any item that the probationer cannot possess under the probation conditions. Wis. Admin. Code HSS §§ 328.21(4), 328.16(1) (1981).[1] The rule provides that an officer should consider a variety of factors in determining whether "reasonable grounds" exist, among which are information provided by an informant, the reliability and specificity of that information, the reliability of the informant (including whether the informant has any incentive to supply inaccurate information), the officer's own experience with the probationer, and the "need to verify compliance with rules of supervision and state and federal law." HSS § 328.21(7). Another regulation makes it a violation of the terms of probation to refuse to consent to a home search. HSS § 328.04(3)(k). And still another forbids a probationer to possess a firearm without advance approval from a probation officer. HSS § 328.04(3)(j).

On April 5, 1983, while Griffin was still on probation, Michael Lew, the supervisor of Griffin's probation officer, received information from a detective on the Beloit Police Department that there were or might be guns in Griffin's apartment. Unable to secure the assistance of Griffin's own probation officer, Lew, accompanied by another probation officer and three plainclothes policemen, went to the apartment. When Griffin answered the door, Lew told him who they were and informed him that they were going to search his home. During the subsequent search—carried out entirely by the probation officers under the authority of Wisconsin's probation regulation—they found a handgun.

---

[1] HSS § 328 was promulgated in December 1981 and became effective on January 1, 1982. Effective May 1, 1986, HSS § 328.21 was repealed and repromulgated with somewhat different numbering and without relevant substantive changes. See 131 Wis. 2d 41, 60, n. 7, 388 N. W. 2d 535, 542, n. 7 (1986). This opinion will cite the old version of § 328.21, which was in effect at the time of the search.

Griffin was charged with possession of a firearm by a convicted felon, which is itself a felony. Wis. Stat. § 941.29(2) (1985–1986). He moved to suppress the evidence seized during the search. The trial court denied the motion, concluding that no warrant was necessary and that the search was reasonable. A jury convicted Griffin of the firearms violation, and he was sentenced to two years' imprisonment. The conviction was affirmed by the Wisconsin Court of Appeals, 126 Wis. 2d 183, 376 N. W. 2d 62 (1985).

On further appeal, the Wisconsin Supreme Court also affirmed. It found denial of the suppression motion proper because probation diminishes a probationer's reasonable expectation of privacy—so that a probation officer may, consistent with the Fourth Amendment, search a probationer's home without a warrant, and with only "reasonable grounds" (not probable cause) to believe that contraband is present. It held that the "reasonable grounds" standard of Wisconsin's search regulation satisfied this "reasonable grounds" standard of the Federal Constitution, and that the detective's tip established "reasonable grounds" within the meaning of the regulation, since it came from someone who had no reason to supply inaccurate information, specifically identified Griffin, and suggested a need to verify Griffin's compliance with state law. 131 Wis. 2d 41, 52–64, 388 N. W. 2d 535, 539–544 (1986).

## II

We think the Wisconsin Supreme Court correctly concluded that this warrantless search did not violate the Fourth Amendment. To reach that result, however, we find it unnecessary to embrace a new principle of law, as the Wisconsin court evidently did, that any search of a probationer's home by a probation officer satisfies the Fourth Amendment as long as the information possessed by the officer satisfies a federal "reasonable grounds" standard. As his sentence for the commission of a crime, Griffin was committed to the legal custody of the Wisconsin State Department of Health and

Social Services, and thereby made subject to that Department's rules and regulations. The search of Griffin's home satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles.

A

A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be "reasonable." Although we usually require that a search be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be), see, *e. g.*, *Payton* v. *New York*, 445 U. S. 573, 586 (1980), we have permitted exceptions when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *New Jersey* v. *T. L. O.*, 469 U. S. 325, 351 (1985) (BLACKMUN, J., concurring in judgment). Thus, we have held that government employers and supervisors may conduct warrantless, work-related searches of employees' desks and offices without probable cause, *O'Connor* v. *Ortega*, 480 U. S. 709 (1987), and that school officials may conduct warrantless searches of some student property, also without probable cause, *New Jersey* v. *T. L. O.*, *supra*. We have also held, for similar reasons, that in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet "reasonable legislative or administrative standards." *Camara* v. *Municipal Court*, 387 U. S. 523, 538 (1967). See *New York* v. *Burger*, 482 U. S. 691, 702–703 (1987); *Donovan* v. *Dewey*, 452 U. S. 594, 602 (1981); *United States* v. *Biswell*, 406 U. S. 311, 316 (1972).

A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents "special

needs" beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements. Probation, like incarceration, is "a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." G. Killinger, H. Kerper, & P. Cromwell, Probation and Parole in the Criminal Justice System 14 (1976); see also 18 U. S. C. § 3651 (1982 ed. and Supp. III) (probation imposed instead of imprisonment); Wis. Stat. § 973.09 (1985–1986) (same).[2] Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. A number of different options lie between those extremes, including confinement in a medium- or minimum-security facility, work-release programs, "halfway houses," and probation—which can itself be more or less confining depending upon the number and severity of restrictions imposed. See, e. g., 18 U. S. C. § 3563 (1982 ed., Supp. III) (effective Nov. 1, 1987) (probation conditions authorized in federal system include requiring probationers to avoid commission of other crimes; to pursue employment; to avoid certain occupations, places, and people; to spend evenings or weekends in prison; and to avoid narcotics or excessive use of alcohol). To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." *Morrissey* v. *Brewer*, 408 U. S. 471, 480 (1972).

---

[2] We have recently held that prison regulations allegedly infringing constitutional rights are themselves constitutional as long as they are "'reasonably related to legitimate penological interests.'" *O'Lone* v. *Estate of Shabazz*, 482 U. S. 342, 349 (1987) (quoting *Turner* v. *Safley*, 482 U. S. 78, 89 (1987)). We have no occasion in this case to decide whether, as a general matter, that test applies to probation regulations as well.

These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. See *State* v. *Tarrell*, 74 Wis. 2d 647, 652–653, 247 N. W. 2d 696, 700 (1976). These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. Recent research suggests that more intensive supervision can reduce recidivism, see Petersilia, Probation and Felony Offenders, 49 Fed. Probation 9 (June 1985), and the importance of supervision has grown as probation has become an increasingly common sentence for those convicted of serious crimes, see *id.*, at 4. Supervision, then, is a "special need" of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. That permissible degree is not unlimited, however, so we next turn to whether it has been exceeded here.

B

In determining whether the "special needs" of its probation system justify Wisconsin's search regulation, we must take that regulation as it has been interpreted by state corrections officials and state courts. As already noted, the Wisconsin Supreme Court—the ultimate authority on issues of Wisconsin law—has held that a tip from a police detective that Griffin "had" or "may have had" an illegal weapon at his home constituted the requisite "reasonable grounds." See 131 Wis. 2d, at 64, 388 N. W. 2d, at 544. Whether or not we would choose to interpret a similarly worded federal regulation in that fashion, we are bound by the state court's interpretation, which is relevant to our constitutional analysis only insofar as it fixes the meaning of the regulation.[3] We

---

[3] If the regulation in question established a standard of conduct to which the probationer had to conform on pain of penalty—*e. g.*, a restriction on his movements—the state court could not constitutionally adopt so unnatural an interpretation of the language that the regulation would fail to provide adequate notice. Cf. *Kolender* v. *Lawson*, 461 U. S. 352, 357–358 (1983); *Lambert* v. *California*, 355 U. S. 225, 228 (1957). That is not an

think it clear that the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify replacement of the standard of probable cause by "reasonable grounds," as defined by the Wisconsin Supreme Court.

A warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires. Moreover, the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct, see *New Jersey* v. *T. L. O.*, 469 U. S., at 340, and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create, see *New York* v. *Burger*, 482 U. S., at 710; *United States* v. *Biswell*, 406 U. S., at 316. By way of analogy, one might contemplate how parental custodial authority would be impaired by requiring judicial approval for search of a minor child's room. And on the other side of the equation—the effect of dispensing with a warrant upon the probationer: Although a probation officer is not an impartial magistrate, neither is he the police officer who normally conducts searches against the ordinary citizen. He is an employee of the State Department of Health and Social Services who, while assuredly charged with protecting the public interest, is also supposed to have in mind the welfare of the probationer (who in the regulations is called a "client," HSS § 328.03(5)). The applicable regulations require him, for example, to "[p]rovid[e] individualized counseling designed to foster growth and development of the client as necessary," HSS § 328.04(2)(i), and "[m]onito[r] the

issue here since, even though the petitioner would be in violation of his probation conditions (and subject to the penalties that entails) if he failed to consent to any search that the regulation authorized, see HSS § 328.04(3)(k), nothing in the regulation or elsewhere required him to be advised, at the time of the request for search, what the probation officer's "reasonable grounds" were, any more than the ordinary citizen has to be notified of the grounds for "probable cause" or "exigent circumstances" searches before they may be undertaken.

client's progress where services are provided by another agency and evaluat[e] the need for continuation of the services," HSS § 328.04(2)(o). In such a setting, we think it reasonable to dispense with the warrant requirement.

JUSTICE BLACKMUN's dissent would retain a judicial warrant requirement, though agreeing with our subsequent conclusion that reasonableness of the search does not require probable cause. This, however, is a combination that neither the text of the Constitution nor any of our prior decisions permits. While it is possible to say that Fourth Amendment reasonableness demands probable cause without a judicial warrant, the reverse runs up against the constitutional provision that "no Warrants shall issue, but upon probable cause." Amdt. 4. The Constitution prescribes, in other words, that where the matter is of such a nature as to require a judicial warrant, it is also of such a nature as to require probable cause. Although we have arguably come to permit an exception to that prescription for administrative search warrants,[4] which may but do not necessarily have to be issued by courts,[5] we have never done so for constitutionally mandated judicial

---

[4] In the administrative search context, we formally require that administrative warrants be supported by "probable cause," because in that context we use that term as referring not to a quantum of evidence, but merely to a requirement of reasonableness. See, *e. g., Marshall* v. *Barlow's, Inc.*, 436 U. S. 307, 320 (1978); *Camara* v. *Municipal Court*, 387 U. S. 523, 528 (1967). In other contexts, however, we use "probable cause" to refer to a quantum of evidence for the belief justifying the search, to be distinguished from a lesser quantum such as "reasonable suspicion." See *O'Connor* v. *Ortega*, 480 U. S. 709, 724 (1987) (plurality); *New Jersey* v. *T. L. O.*, 469 U. S. 325, 341–342 (1985). It is plainly in this sense that the dissent uses the term. See, *e. g., post*, at 881–883 (less than probable cause means "a reduced level of suspicion").

[5] See *Marshall* v. *Barlow's, Inc., supra*, at 307 ("We hold that . . . the Act is unconstitutional insofar as it purports to authorize inspections without warrant or its equivalent"). The "neutral magistrate," *Camara, supra*, at 532, or "neutral officer," *Marshall* v. *Barlow's, Inc., supra*, at 323, envisioned by our administrative search cases is not necessarily the "neutral judge," *post*, at 887, envisioned by the dissent.

warrants. There it remains true that "[i]f a search warrant be constitutionally required, the requirement cannot be flexibly interpreted to dispense with the rigorous constitutional restrictions for its issue." *Frank* v. *Maryland,* 359 U. S. 360, 373 (1959). JUSTICE BLACKMUN neither gives a justification for departure from that principle nor considers its implications for the body of Fourth Amendment law.

We think that the probation regime would also be unduly disrupted by a requirement of probable cause. To take the facts of the present case, it is most unlikely that the unauthenticated tip of a police officer—bearing, as far as the record shows, no indication whether its basis was firsthand knowledge or, if not, whether the firsthand source was reliable, and merely stating that Griffin "had or might have" guns in his residence, not that he certainly had them—would meet the ordinary requirement of probable cause. But this is different from the ordinary case in two related respects: First, even more than the requirement of a warrant, a probable-cause requirement would reduce the deterrent effect of the supervisory arrangement. The probationer would be assured that so long as his illegal (and perhaps socially dangerous) activities were sufficiently concealed as to give rise to no more than reasonable suspicion, they would go undetected and uncorrected. The second difference is well reflected in the regulation specifying what is to be considered "[i]n deciding whether there are reasonable grounds to believe . . . a client's living quarters or property contain contraband," HSS § 328.21(7). The factors include not only the usual elements that a police officer or magistrate would consider, such as the detail and consistency of the information suggesting the presence of contraband and the reliability and motivation to dissemble of the informant, HSS §§ 328.21(7) (c), (d), but also "[i]nformation provided by the client which is relevant to whether the client possesses contraband," and "[t]he experience of a staff member with that client or in a

similar circumstance." HSS §§ 328.21(7)(f), (g). As was true, then, in *O'Connor* v. *Ortega*, 480 U. S. 709 (1987), and *New Jersey* v. *T. L. O.*, 469 U. S. 325 (1985), we deal with a situation in which there is an ongoing supervisory relationship—and one that is not, or at least not entirely, adversarial—between the object of the search and the decisionmaker.[6]

In such circumstances it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts. In some cases—especially those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances.

To allow adequate play for such factors, we think it reasonable to permit information provided by a police officer,[7]

---

[6] It is irrelevant whether the probation authorities relied upon any peculiar knowledge which they possessed of petitioner in deciding to conduct the present search. Our discussion pertains to the reasons generally supporting the proposition that the search decision should be left to the expertise of probation authorities rather than a magistrate, and should be supportable by a lesser quantum of concrete evidence justifying suspicion than would be required to establish probable cause. That those reasons may not obtain in a particular case is of no consequence. We may note, nonetheless, that the dissenters are in error to assert as a fact that the probation authorities made no use of special knowledge in the present case, *post*, at 890. All we know for certain is that the petitioner's probation officer could not be reached; whether any material contained in petitioner's probation file was used does not appear.

[7] The dissenters speculate that the information might not have come from the police at all, "but from someone impersonating an officer." *Post*,

whether or not on the basis of firsthand knowledge, to support a probationer search. The same conclusion is suggested by the fact that the police may be unwilling to disclose their confidential sources to probation personnel. For the same reason, and also because it is the very assumption of the institution of probation that the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law, we think it enough if the information provided indicates, as it did here, only the likelihood ("had or might have guns") of facts justifying the search.[8]

The search of Griffin's residence was "reasonable" within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers. This conclusion makes it unnecessary to consider whether, as the court below held and the State urges, *any* search of a probationer's home by a probation officer is lawful when there are "reasonable grounds" to believe contraband is present. For the foregoing reasons, the judgment of the Wisconsin Supreme Court is

*Affirmed.*

at 888. The trial court, however, found as a matter of fact that Lew received the tip on which he relied from a police officer. See 131 Wis. 2d, at 62, 388 N. W. 2d, at 543. The Wisconsin Supreme Court affirmed that finding, *ibid.*, and neither the petitioner nor the dissenters assert that it is clearly erroneous.

[8] The dissenters assert that the search did not comport with all the governing Wisconsin regulations. There are reasonable grounds on which the Wisconsin court could find that it did. But we need not belabor those here, since the only regulation upon which we rely for our constitutional decision is that which permits a warrantless search on "reasonable grounds." The Wisconsin Supreme Court found the requirement of "reasonable grounds" to have been met on the facts of this case and, as discussed earlier, we hold that such a requirement, so interpreted, meets constitutional minimum standards as well. That the procedures followed, although establishing "reasonable grounds" under Wisconsin law, and adequate under federal constitutional standards, may have violated Wisconsin state regulations, is irrelevant to the case before us.

JUSTICE BLACKMUN, with whom JUSTICE MARSHALL joins and, as to Parts I–B and I–C, JUSTICE BRENNAN joins and, as to Part I–C, JUSTICE STEVENS joins, dissenting.

In ruling that the home of a probationer may be searched by a probation officer without a warrant, the Court today takes another step that diminishes the protection given by the Fourth Amendment to the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In my view, petitioner's probationary status provides no reason to abandon the warrant requirement. The probation system's special law enforcement needs may justify a search by a probation officer on the basis of "reasonable suspicion," but even that standard was not met in this case.

I

The need for supervision in probation presents one of the "exceptional circumstances in which special needs, beyond the normal need for law enforcement," *New Jersey* v. *T. L. O.*, 469 U. S. 325, 351 (1985) (opinion concurring in judgment), justify an application of the Court's balancing test and an examination of the practicality of the warrant and probable-cause requirements. The Court, however, fails to recognize that this is a *threshold* determination of special law enforcement needs. The warrant and probable-cause requirements provide the normal standard for "reasonable" searches. "[O]nly when the practical realities of a particular situation suggest that a government official cannot obtain a warrant based upon probable cause without sacrificing the ultimate goals to which a search would contribute, does the Court turn to a 'balancing' test to formulate a standard of reasonableness for this context." *O'Connor* v. *Ortega*, 480 U. S. 709, 741 (1987) (dissenting opinion). The presence of special law enforcement needs justifies resort to the balancing test, but it does not preordain the necessity of recognizing exceptions to the warrant and probable-cause requirements.

My application of the balancing test leads me to conclude that special law enforcement needs justify a search by a probation agent of the home of a probationer on the basis of a reduced level of suspicion. The acknowledged need for supervision, however, does not also justify an exception to the warrant requirement, and I would retain this means of protecting a probationer's privacy.[1] Moreover, the necessity for the neutral check provided by the warrant requirement is demonstrated by this case, in which the search was conducted on the basis of information that did not begin to approach the level of "reasonable grounds."

## A

The probation officer is not dealing with an average citizen, but with a person who has been convicted of a crime.[2] This presence of an offender in the community creates the need for special supervision. I therefore agree that a probation agent must have latitude in observing a probationer if the agent is to carry out his supervisory responsibilities effectively. Re-

---

[1] There is no need to deny the protection provided by the warrant requirement simply because a search can be justified by less than probable cause. The Court recognizes that administrative warrants are issued on less than probable cause, but it concludes that this has never been the case for "judicial warrants." *Ante,* at 877–878. This conclusion overlooks the fact that administrative warrants *are* issued by the judiciary. See, *e. g., Camara* v. *Municipal Court,* 387 U. S. 523, 532 (1967) ("These are questions which may be reviewed by a neutral magistrate"); *Marshall* v. *Barlow's, Inc.,* 436 U. S. 307, 316 (1978) (warrant requirement for inspection will not "impose serious burdens on . . . the courts"); *id.,* at 323 (warrant "would provide assurances from a neutral officer that the inspection is reasonable under the Constitution").

[2] I find curious, however, the Court's reference to the constitutional standard of review for prison regulations, which neither party argued was applicable to this case. There is plainly no justification for importing automatically into the probation context these special constitutional standards, which are necessitated by the "essential goals" of "maintaining institutional security and preserving internal order and discipline" inside the walls of a prison. *Bell* v. *Wolfish,* 441 U. S. 520, 546 (1979). A probationer is not in confinement.

cidivism among probationers is a major problem, and supervision is one means of combating that threat. See *ante,* at 875. Supervision also provides a crucial means of advancing rehabilitation by allowing a probation agent to intervene at the first sign of trouble.

One important aspect of supervision is the monitoring of a probationer's compliance with the conditions of his probation. In order to ensure compliance with those conditions, a probation agent may need to search a probationer's home to check for violations. While extensive inquiry may be required to gather the information necessary to establish probable cause that a violation has occurred, a "reasonable grounds" standard allows a probation agent to avoid this delay and to intervene at an earlier stage of suspicion. This standard is thus consistent with the level of supervision necessary to protect the public and to aid rehabilitation. At the same time, if properly applied, the standard of reasonable suspicion will protect a probationer from unwarranted intrusions into his privacy.

B

I do not think, however, that special law enforcement needs justify a modification of the protection afforded a probationer's privacy by the warrant requirement. The search in this case was conducted in petitioner's *home,* the place that traditionally has been regarded as the center of a person's private life, the bastion in which one has a legitimate expectation of privacy protected by the Fourth Amendment. See *Silverman* v. *United States,* 365 U. S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion"). The Court consistently has held that warrantless searches and seizures in a home violate the Fourth Amendment absent consent or exigent circumstances. See, *e. g., United States* v. *Karo,* 468 U. S. 705, 714–715 (1984); *Steagald* v. *United States,* 451 U. S. 204 (1981) (arrest warrant inadequate for

search of home of a third party); *Payton* v. *New York*, 445 U. S. 573 (1980) (warrantless arrest of suspect in his home unconstitutional).

> "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' *United States* v. *United States District Court*, 407 U. S. 297, 313 (1972). And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. It is not surprising, therefore, that the Court has recognized, as 'a "basic principle of Fourth Amendment law[,]" that searches and seizures inside a home without a warrant are presumptively unreasonable.' *Payton* v. *New York*, 445 U. S., at 586." *Welsh* v. *Wisconsin*, 466 U. S. 740, 748–749 (1984) (footnote and citation omitted).

The administrative-inspection cases are inapposite to a search of a home. Each of the cases that this Court has found to fall within the exception to the administrative-warrant requirement has concerned the lesser expectation of privacy attached to a "closely regulated" business. See, *e. g.*, *New York* v. *Burger*, 482 U. S. 691 (1987) (vehicle dismantlers); *Donovan* v. *Dewey*, 452 U. S. 594 (1981) (mines); *United States* v. *Biswell*, 406 U. S. 311 (1972) (gun dealers). The reasoning that may justify an administrative inspection without a warrant in the case of a business enterprise simply does not extend to the invasion of the special privacy the Court has recognized for the home.

A probationer usually lives at home, and often, as in this case, with a family. He retains a legitimate privacy interest in the home that must be respected to the degree that it is not incompatible with substantial governmental needs. The Court in *New Jersey* v. *T. L. O.* acknowledged that the Fourth Amendment issue needs to be resolved in such a way

as to "ensure that the [privacy] interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools." 469 U. S., at 343. The privacy interests of probationers should be protected by a similar standard, and invaded no more than is necessary to satisfy probation's dual goals of protecting the public safety and encouraging the rehabilitation of the probationer.

The search in this case was not the result of an ordinary home visit by petitioner's probation agent for which no warrant is required. Cf. *Wyman* v. *James*, 400 U. S. 309 (1971). It was a search pursuant to a tip, ostensibly from the police, for the purpose of uncovering evidence of a criminal violation. There is nothing about the *status* of probation that justifies a special exception to the warrant requirement under these circumstances. If in a particular case there is a compelling need to search the home of a probationer without delay, then it is possible for a search to be conducted immediately under the established exception for exigent circumstances. There is no need to create a separate warrant exception for probationers. The existing exception provides a probation agent with all the flexibility the agent needs.

The circumstances of this case illustrate the fact that the warrant requirement does not create any special impediment to the achievement of the goals of probation. The probation supervisor, Michael T. Lew, waited "[t]wo or three hours" after receiving the telephone tip before he proceeded to petitioner's home to conduct the search. App. 16. He testified that he was waiting for the return of petitioner's official agent who was attending a legal proceeding, and that eventually he requested another probation agent to initiate the search. *Id.*, at 16, 51. Mr. Lew thus had plenty of time to obtain a search warrant. If the police themselves had investigated the report of a gun at petitioner's residence, they would have been required to obtain a warrant. There simply was no compelling reason to abandon the safeguards provided by neutral review.

The Court appears to hold the curious assumption that the probationer will *benefit* by dispensing with the warrant requirement. It notes that a probation officer does not normally conduct searches, as does a police officer, and, moreover, the officer is "supposed to have in mind the welfare of the probationer." *Ante*, at 876. The implication is that a probation agent will be less likely to initiate an inappropriate search than a law-enforcement officer, and is thus less in need of neutral review. Even if there were data to support this notion, a *reduced* need for review does not justify a complete removal of the warrant requirement. Furthermore, the benefit that a probationer is supposed to gain from probation is rehabilitation. I fail to see how the role of the probation agent in "'foster[ing] growth and development of the client,'" *ibid.*, quoting Wis. Admin. Code HSS § 328.04 (2)(i) (1981), is enhanced the slightest bit by the ability to conduct a search without the checks provided by prior neutral review. If anything, the power to decide to search will prove a barrier to establishing any degree of trust between agent and "client."

The Court also justifies the exception to the warrant requirement that it would find in the Wisconsin regulations by stressing the need to have a probation agent, rather than a judge, decide how closely supervised a particular probationer should be. See *ante*, at 876. This argument mistakes the nature of the search at issue. The probation agent retains discretion over the terms of a probationer's supervision—the warrant requirement introduces a judge or a magistrate into the decision only when a full-blown search for evidence of a criminal violation is at stake. The Court's justification for the conclusion that the warrant requirement would interfere with the probation system by way of an analogy to the authority possessed by parents over their children is completely unfounded. The difference between the two situations is too obvious to belabor. Unlike the private nature of a parent's interaction with his or her child, the probation system is a

governmental operation, with explicit standards. Experience has shown that a neutral judge can best determine if those standards are met and a search is justified. This case provides an excellent illustration of the need for neutral review of a probation officer's decision to conduct a search, for it is obvious that the search was not justified even by a reduced standard of reasonable suspicion.

## C

The Court concludes that the search of petitioner's home satisfied the requirements of the Fourth Amendment "because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." *Ante,* at 873. In the Court's view, it seems that only the single regulation requiring "reasonable grounds" for a search is relevant to its decision. *Ante,* at 880, n. 8. When faced with the patent failure of the probation agents to comply with the Wisconsin regulations, the Court concludes that it "is irrelevant to the case before us" that the probation agents "may have violated Wisconsin state regulations." *Ibid.* All of these other regulations, which happen to define the steps necessary to ensure that reasonable grounds are present, can be ignored. This conclusion that the existence of a facial requirement for "reasonable grounds" automatically satisfies the constitutional protection that a search be reasonable can only be termed tautological. The content of a standard is found in its application and, in this case, I cannot discern the application of any standard whatsoever.

The suspicion in this case was based on an unverified tip from an unknown source. With or without the Wisconsin regulation, such information cannot constitutionally justify a search. Mr. Lew testified that he could not recall which police officer called him with the information about the gun, although he thought it "probably" was Officer Pittner. App. 16. Officer Pittner, however, did not remember making any

such telephone call. *Id.*, at 39. From all that the record reveals, the call could have been placed by anyone. It is even plausible that the information did not come from the police at all, but from someone impersonating an officer.

Even assuming that a police officer spoke to Mr. Lew, there was little to demonstrate the reliability of the information he received from that unknown officer. The record does not reveal even the precise content of the tip. The unknown officer actually may have reported that petitioner "had" contraband in his possession, *id.*, at 51, or he merely may have suggested that petitioner "may have had guns in his apartment." *Id.*, at 14. Mr. Lew testified to both at different stages of the proceedings. Nor do we know anything about the ultimate source of the information. The unknown officer's belief may have been founded on a hunch, a rumor, or an informant's tip. Without knowing more about the basis of the tip, it is impossible to form a conclusion, let alone a reasonable conclusion, that there were "reasonable grounds" to justify a search.

Mr. Lew failed completely to make the most rudimentary effort to confirm the information he had received or to evaluate whether reasonable suspicion justified a search. Conspicuously absent was any attempt to comply with the Wisconsin regulations that governed the content of the "reasonable grounds" standard. Wis. Admin. Code HSS § 328.21(7) (1981).[3] No observations of a staff member could

---

[3] The version of the regulations cited by the Court provided:

"(7) In deciding whether there are reasonable grounds to believe a client possesses contraband, or a client's living quarters or property contain contraband, a staff member should consider:

"(a) The observations of a staff member;

"(b) Information provided by an informant;

"(c) The reliability of the information relied on; in evaluating reliability, attention should be given to whether the information is detailed and consistent and whether it is corroborated;

"(d) The reliability of an informant; in evaluating reliability, attention should be given to whether the informant has supplied reliable information

have been considered, as required by subsection (7)(a), for Mr. Lew did not consult the agent who had personal knowledge of petitioner's case. When information was provided by an informant, subsections (7)(c) and (d) required evaluation of the reliability of the information relied upon and the reliability of the informant. Mr. Lew proceeded in violation of these basic requirements. Subsection (7)(f) referred to "information provided by the client" and the explanatory notes stated that "the client should be talked to before the search. Sometimes, this will elicit information helpful in determining whether a search should be made." § 328.21 App., p. 250. This requirement, too, was ignored. Nor do any of the other considerations support a finding of reasonable grounds to conduct the search. There is no indication that there had been prior seizures of contraband from petitioner, or that his case presented any special need to verify compliance with the law. See §§ 328.21(7)(h) and (i).

The majority acknowledges that it is "most unlikely" that the suspicion in this case would have met the normal "probable cause" standard. *Ante,* at 878. It concludes, however, that this is not an "ordinary" case because of the need for supervision and the continuing relationship between the probationer and the probation agency. *Ibid.* In view of this con-

---

in the past, and whether the informant has reason to supply inaccurate information;

"(e) The activity of the client that relates to whether the client might possess contraband;

"(f) Information provided by the client which is relevant to whether the client possesses contraband;

"(g) The experience of a staff member with that client or in a similar circumstance;

"(h) Prior seizures of contraband from the client; and

"(i) The need to verify compliance with rules of supervision and state and federal law." Wis. Admin. Code HSS § 328.21(7) (1981).

The regulations governing the administration of Wisconsin's probation system have been amended recently. See *ante,* at 871, n. 1. Under the new rule the word "should" has been changed to "shall" throughout this subsection. See Wis. Admin. Code HSS § 328.21(6) (1986).

tinuing relationship, the regulations mandated consideration of factors that go beyond those normally considered in determining probable cause to include information provided by the probationer and the experience of the staff member with the probationer. But unless the agency adheres to the regulations, it is sophistic to rely on them as a justification for conducting a search on a lesser degree of suspicion. Mr. Lew drew on no special knowledge of petitioner in deciding to search his house. He had no contact with the agent familiar with petitioner's case before commencing the search. Nor, as discussed above, was there the slightest attempt to obtain information from petitioner. In this case, the continuing relationship between petitioner and the agency did not supply support for any suspicion, reasonable or otherwise, that would justify a search of petitioner's home.

## II

There are many probationers in this country, and they have committed crimes that range widely in seriousness. The Court has determined that all of them may be subjected to such searches in the absence of a warrant. Moreover, in authorizing these searches on the basis of a reduced level of suspicion, the Court overlooks the feeble justification for the search in this case.

I respectfully dissent.

JUSTICE STEVENS, with whom JUSTICE MARSHALL joins, dissenting.

Mere speculation by a police officer that a probationer "may have had" contraband in his possession is not a constitutionally sufficient basis for a warrantless, nonconsensual search of a private home. I simply do not understand how five Members of this Court can reach a contrary conclusion. Accordingly, I respectfully dissent.