BROSKY, Judge.
 

 This is an appeal from a judgment of sentence imposed upon appellant after he was convicted on drug charges. Appellant argues that the court erred in denying his suppression motion. We agree and consequently vacate the judgment of sentence and remand for a new trial.
 

 On March 31,1993, a task force comprised of U.S. Marshals, police officers and parole agents was detailed to apprehend fugitives or others sought in ten warrants and/or probation/parole detainers. One individual sought that day was appellant who was listed as an absconder from the Philadelphia probation/parole department. In attempting to arrest appellant, the group first went to appellant’s listed address on Reinhard Street in Philadelphia and spoke with appellant’s mother who indicated that appellant was not home. After searching the premises and satisfying themselves that appellant was not home, the agents left the premises. Later that day a confidential informant told the agents that appellant was living at an address on Woodland Avenue in Philadelphia. They were also told that appellant had drugs and weapons at that address. Arriving at that address, the group positioned two officers at the rear of the residence while knocking on the front door. After a few minutes without response, the officers stationed at the rear of the home radioed the officers at the front door and told them they had observed two black males
 
 *338
 
 peering out the window. The agents knocked again and, after a lack of response, they forced the door open.
 

 As the agents made their way through a hallway they observed appellant coming down the stairs. Appellant was immediately arrested and handcuffed. After searching appellant’s person, they apprehended the other male on the premises and searched him also. After checking by radio to see if any warrants were issued on the other male and being informed to the negative he was released. The agents next went to the bedroom area of the residence and began searching. After a thorough search of the premises the agents seized a plastic bag continuing vials filled with a white chunky substance, a bag containing two hundred vials, other drug paraphernalia and some .44 caliber shells.
 

 Appellant was charged with possession of controlled substances and drug paraphernalia and possession with intent to deliver. A motion to suppress was filed but denied after a hearing. On September 2, 1993, appellant was convicted after a non-jury trial of possession of a controlled substance and drug paraphernalia. Post verdict motions were filed and denied. This appeal followed.
 

 It is important to note that in making its decision the suppression court did not consider the case of
 
 Commonwealth v. Pickron,
 
 535 Pa. 241, 634 A.2d 1093 (1993). This is notable because
 
 Pickron
 
 essentially changed, or at least modified, the standards which pertain to the warrantless search which occurred in the present case. In
 
 Pickron
 
 our Supreme Court reviewed the Fourth Amendment rights of parolees and probationers. After a dissertation of the relevant law and recent cases on the issue the Supreme Court announced its holding. They stated “[w]e hold therefore that the Fourth Amendment prohibits the warrantless search of probationers or parolee’s residences based upon reasonable suspicion without the consent of the owner or without a statutory or regulatory framework governing the search.”
 
 Id.
 
 535 Pa. at 249, 634 A.2d at 1098. Although the exact standard of protections afforded parolees or probationers prior to
 
 Pickron
 
 is not easily gleaned from the relevant decisions it appears that while parolees were
 
 *339
 
 recognized as possessing due process rights they were not similarly accorded “the full panoply of individual rights and liberties” normally afforded other citizens.
 
 Commonwealth v. Green,
 
 405 Pa.Super. 24, 591 A.2d 1079 (1991).
 

 In
 
 Green
 
 two members of a panel of this court found that a parole officer’s warrantless search of a parolee’s room after he was arrested/detained for a violation of a condition of his parole did not violate his constitutional rights because they had a reasonable belief that narcotics were being kept there.
 
 [1]
 
 This decision relied in part upon the United States Supreme Court’s decision in
 
 Griffin v. Wisconsin,
 
 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), which upheld a similar search which was conducted pursuant to Regulations of the Wisconsin State Department of Health and Social Services. Those regulations allow a warrantless search when a probation officer has “reasonable grounds” to believe contraband was present and also has the permission of his supervisor to conduct a search. A central theme apparently running through both decisions is that a probationer or parolee’s right to be free from intrusion is lessened by the fact that he or she is still under court supervision and by the fact that their freedom is, to some extent, a function of the grace of the courts, resulting either through early release from prison or through a sentence of probation instead of incarceration. However, after
 
 Pickron,
 
 it cannot be said that probationers or parolees are totally without fourth amendment rights.
 

 Our Supreme Court, in deciding
 
 Pickron,
 
 acknowledged both the
 
 Green
 
 and
 
 Griffin
 
 decisions yet chose not to allow a warrantless search of a parolee’s residence based upon reasonable suspicion without the consent of the owner or a statutory or regulatory framework governing the search. The Court explained its holding by stating “we recognize that
 
 *340
 
 there are no safeguards to protect the limited fourth amendment rights of probationers and parolees if their supervision is left entirely to the discretion of individual parole officers.”
 
 Pickron,
 
 535 Pa. at 249, 634 A.2d at 1098. We note that since the
 
 Pickron
 
 decision there has not been passage or promulgation of a statute or regulation authorizing warrantless searches of parolee’s premises or setting forth the framework of when such a search can be conducted. Consequently, the search conducted here, even if supported by a reasonable suspicion that drugs would be found, violates the
 
 Pickron
 
 decision. As such, the suppression court erred in not granting appellant’s suppression motion.
 

 The Commonwealth attempts to argue against the application of
 
 Pickron
 
 by pointing out that in
 
 Pickron
 
 the suppression court had concluded that the parole agents had switched hats and become “stalking horses” for the police, while in the present case the suppression court made the contrary conclusion. This assertion is correct. The suppression court in
 
 Pickron
 
 did conclude that the agents had become stalking horses for police, in effect searching for evidence of the commission of new crimes without a warrant and without probable cause, while the suppression court below concluded that the agents in this case had not become stalking horses for the police. However, we do not see the significance of this conclusion in light of the specific holding of
 
 Pickron.
 
 Our reading of
 
 Pickron
 
 does not lead us to conclude that the suppression court’s finding was an essential element of the decision. Such a conclusion may have been relevant prior to
 
 Pickron,
 
 but the court’s holding in
 
 Pickron
 
 states that warrantless searches of a parolee’s residence, even when supported by reasonable suspicion, are prohibited by the fourth amendment without the consent of the owner or passage of a statutory framework. Nowhere in this rather explicit holding does the Court include the requirement that the agents be found to have been “stalking horses” prior to the prohibition taking effect. As such, we are unpersuaded by the Commonwealth’s argument.
 

 
 *341
 
 The Commonwealth next argues that the Philadelphia Adult Probation Department had an official policy
 
 [2]
 
 requiring search of a parolee’s residence upon arrest when the arresting agent has information that contraband was present or if the subject has such a background. The Commonwealth apparently believes that this “official policy” meets our Supreme Court’s mandate that there be a statutory or regulatory framework in place. We cannot agree. Clearly, even the Commonwealth cannot argue that the “official policy” is statute. Reference to “statute” by the Supreme Court suggests to us legislation passed by the legislature and signed into law as well as publication in the Pennsylvania Statutes complete with a title and section number. Similarly, regulatory framework suggests to us similar introduction and passage by an appropriate state body along with publication. In
 
 Griffin v. Wisconsin, supra,
 
 the apparent genesis of this concept, regulations had been promulgated, pursuant to statute, by the Wisconsin State Department of Health and Social Services. The regulation in question was published at Wis.Admin.Code HSS §§ 328.21(4) and 328.16(1). See,
 
 Griffin,
 
 483 U.S. at 871, 107 S.Ct. at 3167. Consequently, the “official policy” of the Philadelphia Adult Probation Department notwithstanding, we cannot conclude that the requirements stated by our Supreme Court in
 
 Pickron
 
 have been met. To prevent further confusion, we hereby hold that the “statutory or regulatory framework” referred to in
 
 Pickron
 
 requires the passage of a statute or regulation by the appropriate legislative process complete with publication in either the Pennsylvania Statutes or Pennsylvania Code. Since the search in question was without consent and not authorized by such statute or regulation, under
 
 Pickron,
 
 it must be deemed illegal.
 

 For the above reasons we conclude that the suppression court erred in failing to suppress the evidence seized without a warrant. Consequently, the judgment of sentence must be vacated and the case remanded for a new trial.
 

 
 *342
 
 Judgment of sentence vacated, remanded for new trial. Jurisdiction relinquished.
 

 CAVANAUGH, J. concurs in the result.
 

 [1]
 

 . The parole officer had received an anonymous phone call a few weeks previously indicating the parolee might be involved in drug trafficking. In response to the phone call the parolee was placed under surveillance and found to be driving a Cadillac vehicle, which fact he tried to conceal from the parole officer by parking a few blocks away when coming for his visits, and wearing what appeared to be expensive jewelry while supposedly earning only $150 to $200 per week.
 

 [2]
 

 . Despite the Commonwealth's assertion that there was an "official policy” in place, when asked if this policy was in writing Agent Hesson replied "not yet."