655 A.2d 554

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James L. WALTER.**

Superior Court of Pennsylvania.

Argued Oct. 20, 1994.

Filed Jan. 5, 1995.

Reargument Denied March 10, 1995.

264

John T. Robinson, Dist. Atty., Sellinsgrove, for Commonwealth, appellant.

Anne C. Shapiro, Public Defender, Middlesburg, for appellee.

Before BECK, HUDOCK and BROSKY, JJ.

BROSKY, Judge.

This is an appeal by the Commonwealth from an order granting appellee's motion to suppress certain evidence seized at his apartment. Appellant raises one issue for our consideration which, for purposes of our discussion, we phrase in the following manner: whether the acceptance of parole and signing of a "conditions of parole/reparole" form which includes a provision expressly consenting to the search of "my person, property and residence, without warrant by agents of the Pennsylvania Board of Probation and Parole," satisfies the dictates of *Commonwealth v. Pickron,* 535 Pa. 241, 634 A.2d 1093 (1993), governing the search and seizure rights of parolees. We affirm.

Appellee became the subject of an investigation of two separate knifepoint robberies when his picture was picked from a photo array by the victims of those robberies. The robberies occurred on December 31, 1993, and January 3, 1994, one at a convenience store and the other at a motel located on the same roadway, at a time which appellee was under parole supervision having been released from prison in August of 1993. Appellee's parole officer, Michael Duda, was contacted by investigating officers in order to obtain more information regarding appellee. Duda indicated that if appellee was to be arrested he would like to accompany the officers as he believed he could calm appellee and prevent him from attempting to abscond. Appellee was in fact arrested on January 11, 1994, at the place of his employment by Trooper Groninger, who was investigating one of the robberies, and by Duda.

During the arrest, Officer Duda took appellee's car and apartment keys to facilitate a search of both. Duda subsequently executed a search of both the car and the apartment, ostensibly to see if there was any evidence of a violation of appellee's parole, namely possession of alcohol, drugs, drug paraphernalia or weapons. After the search, which did not produce any evidence of parole violations, Duda returned to the State Police Barracks at Selinsgrove where he was asked by a trooper if he had seen a red and black checked jacket or camouflage baseball hat while searching appellee's apartment. These were items which the perpetrator of the robberies was reportedly wearing during their commission. Duda indicated that he had seen such items and a search warrant was obtained based upon Duda's observations. Armed with the search warrant, a search was conducted of appellee's apartment whereupon the jacket, cap and a knife were found and seized.

Appellee filed an omnibus pre-trial motion seeking suppression of three identifications, and suppression of the physical evidence seized at his apartment. The motion was denied as to two of the three identifications, granted as to one of the identifications and granted as to the seizure of physical evidence. This appeal followed.

We start our analysis of the present conflict by reviewing that which is not in controversy here, the premise that probationers and parolees do have a recognized Fourth Amendment right protecting them against "unreasonable searches and seizures." Any doubt of this proposition was dispelled by our Supreme Court's decision in the case of *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993). In *Pickron* our Supreme Court reviewed the Fourth Amendment rights of parolees and probationers and, after a dissertation of the relevant law and recent cases on the issue, announced its holding:

... that the Fourth Amendment prohibits the warrantless search of probationers or parolee's residences based upon reasonable suspicion without the consent of the owner or

without a statutory or regulatory framework governing the search.

*Id.* 634 A.2d at 1098. However, the Court stated just before its holding "we do not have before us a statutory framework nor an agreement by the defendants consenting to the search." *Id.* It is this phrase which seemingly spawned the present controversy.

■ In the present case, the Commonwealth argued below, and argues now, that appellee consented to, or agreed to subject himself to, a warrantless search when he accepted parole because the parole form he signed, PBPP–11, contained a provision which states:

> I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

The suppression court concluded that appellee did not consent to the search by virtue of this clause in the parole form. The question presented to us is whether a search based upon the signing of the standard parole form containing the consent provision just quoted is consistent with the principles outlined in *Pickron.*

We note initially that to allow searches solely on the basis of the above clause effectively negates the underlying premise of *Pickron,* that being that parolees and probationers have certain, albeit limited, Fourth Amendment rights. The essence of Fourth Amendment rights is the concept that individuals have an expectation of security in their person and things; that one will not be subjected to the intrusion of a search without sufficient justification. To allow a search of a parolee for no reason other than that the parolee accepted parole, and in so doing signed a form authorizing a search for any or no reason, is tantamount to the parolee checking his or her Fourth Amendment rights at the door of the prison while leaving, for once out the door that right is effectively surren-

dered. Thus, while *Pickron* clearly recognized that a parolee has Fourth Amendment rights, such a right would be a sham if the above clause were used as justification for a search of a parolee's person or residence. As a matter of course, those rights would be surrendered upon accepting parole and the parolee would be given no effective choice in the matter.[1] We doubt that our Supreme Court would condone the circumventing of the principles of its decision by the simple expediency of forcing an onerous parole "agreement" upon a prospective parolee.

Additionally, we find that a search premised upon the paragraph in the parole form clearly violates the concepts discussed in *Pickron*. In *Pickron*, our Supreme Court, while expounding upon its holding, stated:

> We [so hold] because we recognize that there are no safeguards to protect the limited fourth amendment rights of probationers and parolees if their supervision is left entirely to the discretion of individual parole officers. In the traditional fourth amendment case, the warrant requirement based upon probable cause and issued by a neutral and detached magistrate guarantees the protection of a citizen's constitutional rights. Similarly, in the context of a probationer or parolee's limited fourth amendment rights, some systemic procedural safeguards must be in place to guarantee those limited fourth amendment rights.

The consent paragraph in question provides none of the systemic procedural safeguards mentioned in *Pickron*. It sets forth no criteria for when a search can be conducted and does not provide any form of "neutral" review of the request to search. In short, it completely takes away those rights *Pickron* recognized. It should be noted that the Supreme Court's holding in *Pickron* disallows even a search based upon "reasonable suspicion" without a warrant, consent or a statutory/regulatory framework in place. The clause in question

1. The parole form in question is a standard form used statewide and parole is conditioned upon signing the form. Needless to say, there is no bargaining for terms of parole, nor is it likely that any prisoner is going to refuse parole simply because the terms are deemed unfavorable.

would ostensibly allow, as it did here, a search even if there existed no evidence of a violation of parole. Thus, it would seem clearly insufficient from a "for cause" standpoint.

Lastly, we do not read the segments in *Pickron* which discuss validation of a search by agreement of the parolee to necessarily provide carte blanche approval of any and all such purported agreements.[2] The last segment of the Court's opinion states "[i]n the absence of any statutory or regulatory framework, or an *agreement explicitly setting out the rights of the defendant* and the authority of the state to supervise the defendant, we are constrained to conclude that the actions of these parole officers violated the fourth amendment." *Id.*, 634 A.2d at 1098. In discussing search consent agreements the Court adds the language "explicitly setting out the rights of the defendant." When this phrase is considered in conjunction with the segment last quoted above, it strongly suggests that any agreement between the parolee and the state authorizing a warrantless search would have to provide similar protection of the parolee's rights against intrusion that the warrant process serves.[3] As noted above, the clause presently

2. Indeed, the Court suggested as much in a *Pickron* footnote stating: "[t]his is not to say that an agreement giving consent or a statute authorizing such searches would necessarily survive constitutional scrutiny. We are merely limiting this holding to these facts." *Pickron*, 535 Pa. at 250, n. 6, 634 A.2d at 1098, n. 6.

3. We are not suggesting that the standards applied normally to Fourth Amendment procedures would be applicable to the parolee situation given that the cases state a parolee's Fourth Amendment rights are "limited." However, to the extent a parolee has even "limited" Fourth Amendment rights, it would seem necessary to satisfy the concepts behind the warrant system. Namely a threshold level of evidence implicating illegal activity or parole violations and review and approval of the search request by someone other than the individuals proposing the search.

The United States Supreme Court, in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), upheld a search which was conducted pursuant to Regulations of the Wisconsin State Department of Health and Social Services. Those regulations allow a warrantless search when a probation officer has "reasonable grounds" to believe contraband was present and also has the permission of his supervisor to conduct a search. Thus, a "reasonable grounds to believe" standard and review by a supervisor would appear sufficient to satisfy the limited Fourth Amendment rights of the parolee.

under scrutiny establishes no rights in the parolee, nor provides any protection of rights commonly associated with the Fourth Amendment. Thus, in our opinion, it conflicts with the *Pickron* decision.

Since we find the consent clause in question in conflict with our Supreme Court's decision in *Pickron,* we agree with the suppression court that the search of appellee's residence by Officer Duda was illegal. Thus, the subsequent search and seizure by the investigating officers was also tainted and the decision to suppress was correct. Consequently, we affirm the order appealed from.

Order affirmed.