664 A.2d 1042

COMMONWEALTH of Pennsylvania

v.

Anthony RICHARDSON, Appellant.

Superior Court of Pennsylvania.

Submitted April 4, 1995.

Filed Sept. 8, 1995.

Lenora M. Smith, Harrisburg, for appellant.

Richard E. Guida, Assistant District Attorney, Harrisburg, for the Commonwealth, appellee.

Before CAVANAUGH, McEWEN and DEL SOLE, JJ.

McEWEN, Judge:

Anthony Richardson (hereinafter appellant) has taken this appeal from the judgment of sentence to serve a total term of imprisonment of from 51 months to 102 months, imposed after a jury found him guilty of the offense of possession with intent to distribute cocaine. Appellant argues that the trial court erred when it denied his petition to suppress the contraband discovered after a search was conducted by his supervising parole officer. We are compelled to conclude that the evidence should have been suppressed.

Appellant was released on parole under the supervision of Parole Agent Steven Kissner on January 10, 1992. Six months later, on July 24, 1992, appellant was declared delinquent as a result of his failure to report to Agent Kissner as required under the terms of his parole. While a warrant was issued at that time for his arrest, it was not until three months later, on October 17, 1992, that Agent Kissner received infor-

mation from the Pennsylvania State Police that appellant was staying at the Budgetel Motel in Lower Paxton Township. When Agent Kissner contacted the Lower Paxton Township Police Department, he was informed that Detective Johnson had also received information that appellant was registered at the Budgetel Motel under the alias, Anthony Moore. After confirming that appellant was in the Budgetel Motel, Agent Kissner and the Lower Paxton Township Police assisted the Dauphin County Quick Response Team in the arrest of appellant in his room at the motel. Immediately after the arrest of appellant, Agent Kissner conducted a search of the room, and observed, in plain view on the counter in the room, money, a pager, and some handwritten addresses. The agent also testified that, during his search, he found a plain brown paper bag containing seven bags of cocaine in a trash can under a desk.

After the motion to suppress the cocaine was denied, a jury, on January 11, 1994, found appellant guilty of possession with intent to deliver cocaine.

■ The sole issue presented by appellant in this direct appeal is whether the trial court erred when it denied his motion to suppress the 38.7 grams of cocaine found by the parole agent when he searched the motel room occupied by appellant. Two procedures compose our task as an appellate tribunal charged with a review of an order denying a motion to suppress the evidence. We must first determine whether the findings of fact of the suppression court are supported by the record, for we are bound by those findings of fact if a sound evidentiary basis for the findings exists in the record. As we do so, we must consider the evidence presented by the prosecution, and only so much of the evidence presented by the accused as remains uncontradicted by the record as a whole. Once we determine that there is a sound evidentiary basis for the factual findings of the suppression court, we proceed to the second step of a study of the legitimacy of the inferences and legal conclusions drawn by the court from those findings of fact, for we may only reverse at this stage if

there is an error of law. The Pennsylvania Supreme Court reiterated these principles when it stated:

> When we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous. *Commonwealth v. D'Amato*, 514 Pa. 471, 482, 526 A.2d 300, 305 (1987). Moreover, even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence. *Commonwealth v. Dancer*, 460 Pa. 95, 100 n. 5, 331 A.2d 435, 438 n. 5 (1975).

*Commonwealth v. O'Shea*, 523 Pa. 384, 394, 567 A.2d 1023, 1028 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990). *See also: Commonwealth v. Campbell*, 418 Pa.Super. 391, 396–397, 614 A.2d 692, 695–696 (1992), *allo. denied*, 535 Pa. 630, 631 A.2d 1003 (1993).

This appeal implicates, of course, the nature of the restrictions of the Fourth Amendment upon a parole officer, an issue which has been the subject of rather recent appellate scrutiny. The Pennsylvania Supreme Court in 1993, in its examination of a warrantless search conducted by parole agents who were not accompanied by police, applied the rationale of the United States Supreme Court in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), and held:

> [T]hat the fourth amendment [to the United States Constitution] prohibits the warrantless search of probationer's or parolee's residences based upon reasonable suspicion without the consent of the owner or without a statutory or regulatory framework governing the search. We do so because we recognize that there are no safeguards to protect the limited fourth amendment rights of probationers

and parolees if their supervision is left entirely to the discretion of individual parole officers. In the traditional fourth amendment case, the warrant requirement based upon probable cause and issued by a neutral and detached magistrate guarantees the protection of a citizen's constitutional rights. Similarly, in the context of a probationer or parolee's limited fourth amendment rights, some systemic procedural safeguards must be in place to guarantee those limited fourth amendment rights. In the absence of any statutory or regulatory framework, or an agreement explicitly setting out the rights of the defendant and the authority of the state to supervise the defendant, we are constrained to conclude that the actions of these parole officers violated the fourth amendment.

*Commonwealth v. Pickron*, 535 Pa. 241, 248, 634 A.2d 1093, 1098 (1993) (footnote omitted).

■ Thus, the Court, after reiterating that parole agents cannot act like "stalking horses" for the police, ruled that reasonable suspicion is not a sufficient basis for a parole agent to conduct a warrantless search, in the absence of (1) the consent of the owner, or (2) a statutory or regulatory framework which satisfies the "reasonableness" requirement of the Fourth Amendment.[1]

■ The Commonwealth contends that the warrantless search in the instant case met the *Pickron* test because appellant had *consented* to the search as a condition of his parole when he signed Pennsylvania Board of Probation and Parole form PBPP–11 (Rev. 7/91) which is entitled "Conditions of Parole/Reparole" and, in relevant part, states:

I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsyl-

---

1. The Fourth Amendment to the United States Constitution provides:
   **Unreasonable searches and seizures.**
   *The right of the people to be secure* in their persons, houses, papers, and effects, *against unreasonable searches* and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [emphasis supplied].

vania Board of Probation and Parole. Any items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

However, this precise consent clause has already been found wanting by this Court when our venerable colleague, Judge John G. Brosky, astutely dispatched this same contention in *Commonwealth v. Walter,* 440 Pa.Super. 263, 655 A.2d 554 (1995):

> [T]o allow searches solely on the basis of the above clause effectively negates the underlying premise of *Pickron,* ... [which] clearly recognized that a parolee has Fourth Amendment rights, [and] such a right would be a sham if the above clause were used as justification for a search of a parolee's person or residence. . . .
>
>          \*      \*      \*      \*      \*      \*
>
> The consent paragraph in question provides none of the systemic procedural safeguards mentioned in *Pickron.* It sets forth no criteria for when a search can be conducted and does not provide any form of "neutral" review of the request to search. In short, it completely takes away those rights *Pickron* recognized.

This clarity of rationale precludes elaboration, and we move to consideration of whether the alternative test of *Pickron* has been fulfilled.

The Commonwealth does not contend that a statute or regulation rendered the warrantless search valid. Rather, the warrantless search was conducted by the parole agent pursuant to the "common practice" of parole agents as revealed during the interrogation of the parole agent by the prosecutor:

Q. Once the quick response team made entry how long thereafter did you enter the room?

A. Approximately one to two minutes after that after the room had been secured.

Q. And what did you do when you entered the room?

A. At that point *I conducted a parole search.* Um, I went to the far end of the room, um, I looked into a waste paper

basket that was, um, underneath the desk. Um, in the waste paper basket there was a brown lunch bag. I had opened that up and, um, found seven bags of suspected cocaine. (emphasis supplied)

Q. You've termed that *a parole search. Would that be a common practice of you and others of your department to make a search when someone's being arrested on a parole warrant?* (emphasis supplied)

A. Yes, it would be.

This Court has already wisely rejected such a basis for conducting a warrantless search when, in *Commonwealth v. Alexander,* 436 Pa.Super. 335, 647 A.2d 935 (1994), it applied *Pickron* to proscribe *policy* as a justification for such governmental intrusion. The Commonwealth in *Alexander, supra,* had argued that the search had been conducted by the probation officer pursuant to an "official policy", albeit not in writing, of his department. Judge Brosky there opined for this Court that the mandate of the Supreme Court in *Pickron,* that warrantless searches may be lawfully conducted by parole or probation agents only when performed pursuant to a "statutory or regulatory framework", meant nothing less than

legislation passed by the legislature and signed into law as well as publication in the Pennsylvania Statutes complete with a title and section number. Similarly, regulatory framework suggests to us similar introduction and passage by an appropriate state body along with publication.

*Commonwealth v. Alexander, supra* at 339, 647 A.2d at 938.

The purpose of the police power is, of course, the protection of the public, and that power can only be defined and conferred by the legislative branch.

... [T]he need of every society, including our free society, to provide for enforcement of its laws and thereby enable the preservation of the common weal is intrinsic to the existence of any society. That need in our society is, of course, described in constitutional parlance as the "police power". On the other hand, the quite decisive restrictions upon the "police power" imposed by the founders and

framers in the Bill of Rights bespeaks their keen awareness of the awesome nature of the "police power".

*Commonwealth v. Martinson*, 368 Pa.Super. 130, 139, 533 A.2d 750, 755 (1987). There can be no room in this equation for those, upon whom the police power is conferred, to confer further power upon themselves by adoption of *policy* or *practice* which can fluctuate with the situation, the time, and even the supervisor on duty. Citizens must obey duly enacted laws. Citizens are even subject to duly adopted regulations. Surely the laws and regulations promulgated by the legislature are quite a sufficient body of authority to enable government agents to enforce the law. To allow government agents to rely, in addition, upon *policy* is to allow government by men and to set the stage for governmental oppression—even when the reliance of the agents is not contrived.

The anarchist claims *principle* as authority for his crimes. The tyrant relies upon *policy* as authority for oppression. In fact, *policy* has, through the ages, been the label most relied upon by tyrants and dictators, as well as their viceroys and agents, to justify and to beard and to disguise acts and activities for which approval is not found in the law. The term became a selected device of the tyrant since *policy* casts the positive reflection and image of lawfulness—as well it might, since policy was for the Romans ... *ratio rei publicae gerendae*—and, a few centuries thereafter, *raison d'être de la monarchie*. *Constitutionality*, however, is a standard which transcends the tongues of the ancients, and the perverse translations of oppressors.

These notions are the subject of contemporary debate, if not alarm. Since oppression thrives in the shadows, and flourishes in secrecy, *policy* is often the tool, nay the weapon, of the *plainclothes police*, who eschew the title of officer for that of *special agent*, and, as their excesses are unchecked, and they answer only to themselves, become the secret police or even, as the twentieth century history of Germany and Russia lessons, the shadow government. The debate centers, of course, on the present extent of that threat to our country.

In any event, we conclude that the warrantless search by the parole agent was an unreasonable intrusion under the Fourth Amendment.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.