656 So.2d 536 (1995)
Juan SOCA, Appellant,
v.
The STATE of Florida, Appellee.
No. 94-1214.
District Court of Appeal of Florida, Third District.
June 7, 1995.
*537 Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before LEVY, GERSTEN and GREEN, JJ.
LEVY, Judge.
The defendant appeals his conviction for cocaine possession, challenging the denial of his motion to suppress evidence found during a warrantless search of his residence by his probation officer. Because we find the search constitutional, we affirm.

I.
The defendant, Juan Soca, was on probation from two previous criminal convictions, and was living in a trailer in Monroe County with his parents. An investigator from the Monroe State Attorney's office obtained information from a confidential informant that the defendant was dealing cocaine. The investigator set up a controlled purchase, at which the informant purchased cocaine from another individual while in the presence of the defendant. The investigator was nearby at the time, and was able to independently confirm that a purchase had been made. The informant later reported that the defendant was in possession of a large quantity of cocaine which had just come in from Miami. The investigator contacted the defendant's probation officer, and relayed what his investigation had revealed. The probation officer indicated that the defendant had recently undergone urinalysis, and had tested positive for cocaine. Based upon this information, the probation officer consulted with his supervisor, who instructed the officer to search the defendant's residence for contraband which might indicate that the defendant had violated the terms of his probation.
The probation officer and the investigator went to the defendant's trailer. The defendant was not home, but his father beeped him and he appeared within 20 minutes. The probation officer informed the defendant that he was going to search the trailer in order to monitor compliance with the terms of the defendant's probation, and the defendant told him to go ahead and search. The probation officer conducted the search himself; the investigator did not participate. The search revealed cocaine hidden under the floor of a hallway closet in the trailer. No search warrant was ever sought or obtained.
The defendant was charged with possession of over 400 grams of cocaine, in violation of Florida Statutes Section 893.135. He moved to suppress the cocaine, arguing that the search of his trailer was warrantless and unconstitutional. In his motion, the defendant admitted that the evidence found during the search could be used against him in a probation revocation proceeding, but argued that it could not be used to support the independent criminal charge of cocaine possession.
The defendant's motion was denied. The trial court found that the probation officer had a reasonable suspicion that contraband would be found in the trailer. Therefore, the trial court concluded that the search was legal, considering the defendant's probationary status, as well as the other circumstances of the case. The defendant was later convicted by a jury, and sentenced to 15 years imprisonment. He subsequently pled guilty to two counts of violating probation, and was sentenced to one year on each violation, with all sentences to run concurrently. The defendant now appeals, challenging only the trial court's denial of his motion to suppress.

II.
The legality of this search is governed by Article I, Section 12 of the Florida Constitution, which deals with searches and seizures. As amended by the electorate in 1982, Article I, Section 12 requires us to *538 follow the United States Constitution's Fourth Amendment, as interpreted, in all past and future decisions, by the United States Supreme Court. See Perez v. State, 620 So.2d 1256, 1258 (Fla. 1993); Bernie v. State, 524 So.2d 988, 990-91 (Fla. 1988). Article I, Section 12 is to be interpreted in conformity with the Fourth Amendment, and may not be read to provide any greater protections. See Art. I, § 12, Fla. Const.; Jones v. State, 648 So.2d 669, 674 (Fla. 1994); Perez, 620 So.2d at 1258; Bernie, 524 So.2d at 990-91. "Indeed, an exclusionary rule that was once constitutionally mandated in Florida can now be eliminated by judicial decision of the United States Supreme Court." Bernie, 524 So.2d at 991. However, where the United States Supreme Court has not ruled on a particular search and seizure issue, it is appropriate to rely upon previous Florida cases, see State v. Cross, 487 So.2d 1056, 1057 (Fla.), cert. dismissed, 479 U.S. 805, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986), and cases from other jurisdictions, see Jones, 648 So.2d at 674. With this structure in mind, it is necessary to briefly review, in chronological order, the caselaw upon which the State and the defendant rely.

III.
In Grubbs v. State, 373 So.2d 905 (Fla. 1979), the Florida Supreme Court found unconstitutional, under the old version of Article I, Section 12, a condition of probation which required the probationer to consent to a warrantless search of his home at any time by any law enforcement officer. Grubbs, 373 So.2d at 910. In discussing the issue, the Grubbs court distinguished situations where evidence was sought to be used in a probation revocation proceeding from situations where evidence was sought to be used to support a new, independent criminal charge. With respect to probation revocation proceedings, Grubbs held that "[t]he search of a probationer's person or residence by a probation supervisor without a warrant is, in our view, a reasonable search and absolutely necessary for the proper supervision of probationers." Grubbs, 373 So.2d at 909. However, with respect to new criminal charges, Grubbs held that ordinary search and seizure law applied, although a probationer's status could be taken into account in making a probable cause determination. Grubbs, 373 So.2d at 910. Thus, the result of Grubbs was to allow certain evidence, which would be excluded from a substantive case because it was illegally seized, to be nonetheless admitted in a probation revocation proceeding.
In State v. Dodd, 419 So.2d 333 (Fla. 1982), the Florida Supreme Court further clarified that under the old version of Article I, Section 12, the exclusionary rule applied equally to probation revocation proceedings as it did to regular prosecutions: "A person's status as a probationer may be taken into consideration in determining whether a search or seizure is unreasonable for constitutional purposes, but in Grubbs this Court unequivocally repudiated the notion that the article I, section 12 exclusionary rule may simply be ignored at a probation revocation hearing." Dodd, 419 So.2d at 335 (footnote omitted). Dodd therefore left intact the holding of Grubbs that "a warrantless search of a probationer's person or residence by a probation supervisor is valid to the extent that the evidence discovered is used only in probation violation proceedings." Grubbs, 373 So.2d at 907.
Shortly after the decision in Dodd, the previously-mentioned amendment to Article I, Section 12 was adopted. The amendment became effective January 4, 1983.
Three years later, the Florida Supreme Court held that Dodd was still controlling law in regards to the admissibility of illegally obtained evidence at a probation revocation hearing. See Cross, 487 So.2d at 1058. In holding that Dodd was still controlling precedent, the Florida Supreme Court pointed out that there was no United States Supreme Court precedent on the issue. Cross, 487 So.2d at 1057.
Subsequent to Cross, however, the United States Supreme Court issued its decision in Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). In Griffin, a probationer's home was searched by probation officers (accompanied by police) after a probation officer received information from police that the probationer had contraband in his home. Griffin, 483 U.S. at 871, 107 S.Ct. *539 at 3167. The search was conducted pursuant to a Wisconsin statute which allowed a warrantless search of a probationer's home if there were "reasonable grounds" to believe that contraband was present. Griffin, 483 U.S. at 870-71, 107 S.Ct. at 3166-67. A gun was found, the probationer was charged with possession of a gun by a felon, and the probationer moved to suppress the gun. The motion was denied, and the probationer was convicted. Griffin, 483 U.S. at 872, 107 S.Ct. at 3167. On review, the United States Supreme Court found that Wisconsin's statutory scheme for the supervision of probationers was constitutional. The Court stated that there had been no constitutional infringement because the search of the probationer's residence was conducted pursuant to a constitutional, statutory system for monitoring probationers. Griffin, 483 U.S. at 873, 107 S.Ct. at 3168. The search was approved despite the absence of either probable cause or a warrant. The Court explicitly refrained, however, from holding that all probationer searches based upon "reasonable grounds" were valid. Griffin, 483 U.S. at 880, 107 S.Ct. at 3172. The validity of the search was tied to the validity of the statutory system for monitoring probationers.
It is from these precedents that both sides construct their arguments.

IV.
The defendant argues that Griffin is inapplicable to this case because the United States Supreme Court only approved the search in that case because of Wisconsin's regulatory scheme, and, he further argues, there is no such similar scheme in Florida. Accordingly, the defendant argues that this case is controlled by Grubbs, and that the cocaine was only admissible in a probation revocation proceeding, but not in this new, substantive criminal case. In support of this contention, the defendant relies upon the post-Griffin case of Braxton v. State, 524 So.2d 1141 (Fla. 2d DCA 1988). In Braxton, the defendant was on community control when his home was searched without a warrant and a gun was found. Citing Grubbs, the Second District held that the gun should have been suppressed because "the product of a warrantless search of a probationer's home is not admissible to prove a new criminal offense." Braxton, 524 So.2d at 1141.
The State argues that the search herein was reasonable and should be upheld under Griffin, even though Florida does not have as detailed a statutory scheme regulating probation supervision as was upheld in Griffin. The State specifically contends that because probation supervision is a "special need" situation, a warrantless search is permissible. The State further contends that the statute which authorizes a warrantless arrest of a probationer (section 948.06) also supports a warrantless search of a probationer under Griffin.

V.
The defendant has conceded that the cocaine was admissible for purposes of a probation revocation hearing. Consequently, the only issue is whether the cocaine was admissible on the new criminal charges. Therefore, pursuant to Article I, Section 12 (as amended), we must look to the United States Supreme Court precedents. We agree with the State that the controlling precedent is Griffin, and pursuant thereto, we find that the search conducted in this case was constitutional.
In conducting our Griffin analysis, we are not limited to consideration of only the statutes and administrative regulations. Rather, we may engage in a broader analysis of all legal authority, including applicable state caselaw and the defendant's probation conditions, which may serve to provide a regulatory framework for a search of a probationer by a probation officer. See United States v. Giannetta, 909 F.2d 571 (1st Cir.1990) (approving a search of a probationer's residence under Griffin where there was no regulatory scheme, but only a probation condition authorizing such a search); United States v. Schoenrock, 868 F.2d 289 (8th Cir.1989) (upholding a warrantless search of a probationer's residence under Griffin based solely upon a condition of probation).

A.
First, we find Florida Statutes Section 948.06(1) to be pertinent. It states:

*540 Whenever within the period of probation ... there are reasonable grounds to believe that a probationer ... has violated his probation ... in a material respect, any parole or probation supervisor may arrest or request any county or municipal law enforcement officer to arrest such probationer or offender without warrant... .
§ 948.06(1), Fla. Stat. (1993) (emphasis added). This statute authorizes a warrantless arrest by a probation officer upon "reasonable grounds." While the statute does not explicitly authorize a warrantless search, it does constitute a legislative endorsement of the "reasonable grounds" standard as a basis for an imposition upon a probationer's privacy. This "reasonable grounds" standard is identical to the standard approved as constitutional in Griffin. Moreover, Section 948.06(1) constitutes an implicit approval of a search based upon "reasonable grounds" because the Legislature certainly was aware that an arrest by a probation officer would authorize a search of the probationer incident to arrest, see United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and might justify an inventory search, see Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), or even a protective sweep of the premises, see Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).
Second, Florida Statutes Section 948.03 regulates the terms and conditions of probation, and states, "[t]he court shall determine the terms and conditions of probation ... and may include among them the following, that the probationer ... shall: ... [p]ermit ... [probation] supervisors to visit him at his home or elsewhere." § 948.03(1)(b), Fla. Stat. (1993). This statute is significant in two respects. First, it allows a visit to a probationer's home, which is obviously a necessary predicate to a search of the home, and would allow for the observation of any items in "plain view." In fact, just such a condition was a part of the defendant's probation in this case.[1] Second, the statute contains a grant of authority to sentencing judges to set special terms of probation. In this case, an additional condition of the defendant's probation was that the defendant "submit to urinalysis, breathalyzer or blood test[s] at any time requested by your probation officer." While nothing in the defendant's probation order specifically authorized a search of the defendant's residence, these two conditions  allowing a home visit and authorizing a drug test  provided the defendant's probation officer with an adequate framework within which to conduct the search at issue here, which was a search of the defendant's home for drugs. Cf. Grubbs, 373 So.2d at 910 ("We emphasize that the authority of probation supervisors and law enforcement officers to conduct warrantless searches of probationers in accordance with the views set forth in this opinion is not dependent upon a search condition expressly set forth in the order of probation."). Consequently, we find that the parameters derived from Sections 948.06 and 948.03 provided a sufficient regulatory scheme so as to uphold the search in this case under Griffin. Additionally, the defendant has not contradicted the probation supervisor's testimony in this case indicating that Department of Corrections "regulations" were followed in conducting the search of the defendant's residence.
Third, Grubbs itself adds to the regulatory framework, for Grubbs specifically held that, "[t]he search of a probationer's person or residence by a probation supervisor without a warrant is, in our view, a reasonable search and absolutely necessary for the proper supervision of probationers." 373 So.2d at 909. This statement has long-guided probation personnel in the conduct of their duties, and may well be the reason that submission to a residential search was not specifically included in the defendant's conditions of probation. In the immediate wake of Grubbs, courts of this state repeatedly approved of a condition of probation which required a probationer to consent to a search by his probation officer at any time, regardless of the justification for the search. See Elkins v. State, 388 So.2d 1314 (Fla. 5th DCA 1980) (upholding a condition of probation to the extent it required the *541 probationer to submit to a search of his residence at any time by his probation officer); Smith v. State, 383 So.2d 991 (Fla. 5th DCA 1980) (same); Jessee v. State, 375 So.2d 881 (Fla. 2d DCA 1979) (same). If such a condition is permissible, then it is also permissible for a search to be conducted, absent such a condition, when the probation officer has "reasonable grounds" to believe the search will reveal evidence of a probation violation. Moreover, when such a search is based upon reasonable grounds, the fruits of the search are admissible in any subsequent legal proceeding.[2]
Therefore, we find that the applicable statutes, the conditions of the defendant's probation, and Grubbs itself provided an adequate framework under Griffin to validate the search. Consequently, the defendant's residence was properly searched without a warrant by his probation officer, and the evidence found in the search was properly admitted in a new criminal proceeding, if the officer had reasonable grounds to believe that the search would reveal evidence of a material violation of probation.

B.
We now address the legality of the search in this case. Several facts gave the probation officer reasonable grounds to search the defendant's residence. First, the officer had received detailed information from a confidential informant that the defendant had been dealing cocaine. Second, the confidential informant made a controlled purchase of cocaine while in the defendant's presence, and the investigator was able to independently confirm this. Third, the informant later informed authorities that the defendant had just received a large amount of cocaine from Miami. Fourth, the probation officer was aware that the defendant had recently had a urinalysis test which was positive for cocaine. These circumstances were more than sufficient to give the probation officer "reasonable grounds" to believe that the search would reveal evidence of a violation of probation. Therefore, the search was legal, and the cocaine which was discovered during it was properly admitted below.

VI.
In conclusion, we hold that the defendant's motion to suppress was properly denied. The defendant's conviction and sentence are affirmed.
NOTES
[1] Because this condition is specifically enumerated in the statute, we would not consider the absence of such a condition from the defendant's probation order significant with respect to our Griffin analysis.
[2] We distinguish Braxton v. State, 524 So.2d 1141 (Fla. 2d DCA 1988). That case apparently involved a search conducted by officers other than the defendant's community control officer, and the opinion did not engage in a Griffin analysis.