673 So.2d 24 (1996)
Juan SOCA, Petitioner,
v.
STATE of Florida, Respondent.
No. 86284.
Supreme Court of Florida.
April 25, 1996.
Bennett H. Brummer, Public Defender and Bruce A. Rosenthal, Assistant Public Defender, Miami, for Petitioner.
Robert A. Butterworth, Attorney General and Michael J. Neimand, Assistant Attorney General, Miami, for Respondent.
PER CURIAM.
We have for review Soca v. State, 656 So.2d 536 (Fla. 3d DCA 1995), which expressly and directly conflicts with our opinion in *25 Grubbs v. State, 373 So.2d 905 (Fla.1979). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. Because the district court failed to apply and follow our holding in Grubbs, we quash Soca.

FACTS
The defendant, Juan Soca, who was on probation for two previous criminal convictions, lived in Monroe County with his parents in their house trailer. An investigator from the Monroe County State Attorney's office contacted Lisa Kaminski, the defendant's probation supervisor, and advised her that he believed Soca was dealing in cocaine. When Ms. Kaminski reviewed the defendant's files, she found that he had tested positive for cocaine in his most recent urinalysis. Based upon this information, Ms. Kaminski instructed the defendant's probation officer to search the defendant's residence for contraband which might indicate that the defendant had violated the terms of his probation.
The probation officer and the investigator went to the defendant's trailer and, when the defendant arrived at the trailer twenty minutes later, the probation officer informed the defendant that he was going to search the trailer in order to monitor compliance with the terms of the defendant's probation. The defendant told him to go ahead and perform the search, which the probation officer conducted himself. The search revealed cocaine hidden under the floor of a hallway closet in the trailer. No search warrant was ever sought or obtained, and the investigator testified that he consciously decided not to seek a warrant from a neutral magistrate but rather to have the probation authorities conduct the search.
After Soca was charged with possession of cocaine, he moved to suppress, arguing that the warrantless search of his trailer barred the use of the fruits of the search in any proceedings other than his probation revocation proceedings. The trial court denied the motion and Soca was subsequently convicted by a jury and sentenced to fifteen years imprisonment. He also pled guilty to two counts of violating probation, and was sentenced to one year on each violation, with all sentences to run concurrently. The Third District affirmed and held that the trial court properly denied Soca's motion to suppress.

GRUBBS
This Court has held that a warrantless search of a probationer's person or residence by a probation supervisor is valid to the extent that the evidence discovered in the search may be used in probation revocation proceedings. Grubbs v. State, 373 So.2d 905, 907 (Fla.1979). However, in Grubbs we expressly held that evidence obtained in a probationary search may not be admitted against the probationer in a separate criminal proceeding unless the search meets customary search and seizure standards established under article I, section 12 of the Florida Constitution. Id.[1] In his opinion for a unanimous court, Justice Overton summarized the holding of Grubbs:
In summary, the fourth amendment ordinarily applies to a probationer when evidence is used to prove a separate criminal offense although the probationer's status gives the probation supervisor standing to be in locations not ordinarily available to law enforcement officers. Further, when either probation supervisors or law enforcement officers seek a warrant, the probationary status may be used as a factor to establish probable cause.
Id. at 910.

THE SEARCH OF SOCA'S TRAILER
In this case, none of the parties contend that the State did not have the opportunity to seek a search warrant. To the contrary, the record indicates that the prosecutor made a conscious choice not to seek a warrant and instead allow the search to be conducted pursuant to the supervisory authority granted probation supervisors in Grubbs. Soca *26 does not dispute the fact that the evidence seized during the search of his parents' trailer could be used against him in probation violation proceedings.
The State acknowledges the holding of Grubbs and further acknowledges that the Department of Corrections (DOC) has codified the Grubbs rule in its Community Control Implementation Manual (hereinafter CCIM).[2] In this case, the search of Soca's trailer was carried out by probation authorities in a manner consistent with DOC procedures and, as all parties agree, in accord with Grubbs.

THE PRIMACY OF THE FLORIDA CONSTITUTION AND CASELAW
Our holding in Grubbs was expressly predicated upon the protections afforded our citizens against unreasonable searches and seizures set out in the Florida Constitution. The State contends that our ruling in Grubbs has been superseded by the holdings of the United States Supreme Court and an amendment to our state constitution requiring us to apply U.S. Supreme Court decisions to Florida search and seizure issues.
In 1982, article I, section 12 of the Florida Constitution, relating to search and seizure, was amended to read:
Searches and seizures.The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.

The underlined portions above constitute the 1982 amendment. However, in the absence of a controlling U.S. Supreme Court decision, Florida courts are still "free to provide its citizens with a higher standard of protection from governmental intrusion than that afforded by the Federal Constitution." State v. Lavazzoli, 434 So.2d 321, 323 (Fla.1983); *27 see also Traylor v. State, 596 So.2d 957, 961 (Fla.1992) (affirming the rule of primacy of Florida's constitution).
With the conformity clause amendment, we are bound to follow the interpretations of the United States Supreme Court with respect to the Fourth Amendment and provide to Florida citizens no greater protection than those interpretations. Bernie v. State, 524 So.2d 988, 990-91 (Fla.1988). However, when the United States Supreme Court has not previously addressed a particular search and seizure issue which comes before us for review, we will look to our own precedent for guidance. See Traylor; State v. Cross, 487 So.2d 1056, 1057 (Fla.), cert. dismissed, 479 U.S. 805, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). We find no controlling U.S. Supreme Court decision on point to overrule our holding in Grubbs.
The State argues that the issue is controlled by United States Supreme Court decisions in Abel v. United States, 362 U.S. 217, 239, 80 S.Ct. 683, 697, 4 L.Ed.2d 668 (1960) (holding items of evidence seized as result of arrest by immigration officials acting under administrative warrant were admissible against defendant in prosecution for espionage); New York v. Burger, 482 U.S. 691, 716, 107 S.Ct. 2636, 2651, 96 L.Ed.2d 601 (1987) (holding that discovery of evidence of crimes in course of otherwise proper administrative inspection of closely regulated business does not render that search illegal or administrative scheme suspect); and Gouled v. United States, 255 U.S. 298, 312, 41 S.Ct. 261, 266, 65 L.Ed. 647 (1921) (noting that when property was seized pursuant to legally sufficient search warrant, it could be used as evidence to prove any crime against accused so long as it was relevant). We disagree. While we recognize that these cases deal with instances where a defendant's property was searched for one purpose and the evidence discovered was then admissible against the defendant for other purposes, none of them address the precise issue before us. Because the U.S. Supreme Court has not specifically decided the issue in this case, we reject the State's contention that Grubbs has been effectively overruled under the conformity clause amendment to article I, section 12 of the Florida Constitution.
Likewise, we reject the State's argument, as well as the district court's conclusion, that Florida's statutory scheme regulating probation supervision, sections 948.03 and 948.06, Florida Statutes (1995), is sufficiently analogous to the Wisconsin regulation at issue in Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), so as to make the holding in Griffin controlling here. In Griffin, the U.S. Supreme Court upheld a search of a probationer's residence, stating, "The search of Griffin's residence was `reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to [Wisconsin's] valid regulation governing probationers." Id. at 880, 107 S.Ct. at 3172. The Wisconsin law in question there put probationers in the legal custody of the State Department of Health and Social Services and specifically rendered them "subject... to ... conditions set by the court and rules and regulations established by the department." Wis.Stat. § 973.10(1) (1985-86). One of the Department's regulations explicitly permitted any probation officer to search a probationer's home without a warrant as long as his supervisor approved and as long as there were "reasonable grounds" to believe contraband was presentincluding any item that the probationer was not allowed to possess under the probation conditions. Wis.Admin.Code HSS §§ 328.21(4), 328.16(1) (Dec. 1981). Wisconsin's rule provided that the officer should consider a variety of factors in determining whether "reasonable grounds" existed, among which were information provided by an informant, the reliability and specificity of that information, the reliability of the informant (including whether the informant had any incentive to supply inaccurate information), the officer's own experience with the probationer, and the "need to verify compliance with rules of supervision and state and federal law." Id. § 328.21(7). Another regulation made it "a violation of the terms of probation to refuse to consent to a home search." Griffin, 483 U.S. at 870-71, 107 S.Ct. at 3167.
Unlike Wisconsin's statutory scheme, see Wis.Admin.Code HSS §§ 328.21(4), 328.16(1) *28 (Dec. 1981), Florida's statutes contain no scheme expressly authorizing or regulating the authority of probation officers or supervisors to conduct a probationary search when it is supported by "reasonable grounds." Rather, a probation officer's right to search is based on our holding in Grubbs, wherein we expressly limited the use of the fruits of such a search to probation proceedings. Accordingly, we find that the instant case is clearly distinguishable from Griffin, and under Grubbs the evidence obtained in the probationary search of Soca's trailer is not admissible against him in a new criminal proceeding.[3]
As this case illustrates, the Grubbs rule regulating probationary searches and the admissibility of evidence discovered therein has served as a workable framework for the DOC for over sixteen years, and we believe it remains a sound policy today. There has been no demonstration that our decision in Grubbs does not represent a proper balancing of the need to maintain effective supervision and control over probationers with the long-held constitutional right of each citizen to be free from searches and seizures which violate the principles of article I, section 12, of the Florida Constitution.
The Grubbs rule gives the State considerable leeway in investigating and monitoring probationers. When the State believes that a probationer is engaging in criminal behavior, the State may choose to inform probation officials of his alleged criminal conduct and place further responsibility for investigating his conduct with those officials. Apprised of this information, the probation supervisor may exercise his or her authority to search the probationer's person or residence for evidence that the probationer is violating the terms of his probation. Should the probation supervisor discover such evidence, it can be used against the probationer in a probation revocation proceeding.
On the other hand, the State may choose to continue its investigation and attempt to secure a warrant to search the probationer's residence in compliance with traditional search and seizure standards under article I, section 12, of the Florida Constitution. The State may also utilize the fact that the subject of its investigation is on probation as part of the circumstances establishing the probable cause necessary to secure a warrant.

CONCLUSION
We reaffirm Grubbs, quash Soca, and remand for further proceedings consistent with Grubbs and this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
WELLS, J., dissents.
NOTES
[1] In that regard, the defendant's status as a probationer is an appropriate factor to be considered in determining whether the evidence seized in a probationary search is also admissible in a new criminal proceeding under article I, section 12. Id. For example, the fact that a defendant is on probation and the nature of the offense for which he was placed on probation may be part of the showing made by the State in seeking a search warrant.
[2] For instance, the DOC manual states, "An administrative probation or parole revocation hearing is different from a criminal trial to determine the guilt of a violation charge. Evidence may be presented at a revocation hearing that could not be admissible in a trial." CCIM at 41 (emphasis added). Moreover, the DOC specifically notes that the authority to search a probationer's residence under Grubbs is limited to correctional probation officers and supervisors:

Evidence obtained by search by an officeris admissible at a revocation hearing even though there was no search warrant. The courts have held that the search of a probationer's person or residence by his probation officer without a warrant is reasonable and absolutely necessary for probation supervision. However, granting such authority to law enforcement officials is not permissible.... Evidence conducted at such searches may be used at revocation hearings.
Id. at 43. Finally, the DOC requires that its probation staff follow a procedure consistent with Grubbs when conducting a probationary search like the one in this case:
c. No officer shall make a planned search of an offender's residence, car or person unless he has specific approval of his supervisor. Before making any planned searches, the officer shall document and review the plan with the supervisor, indicating reasons and risks involved. Upon approval, a search warrant may be requested and law enforcement assistance obtained if the situation warrants such action. Probation and parole staff shall avoid "raids" on probationer's [sic] houses.
d. It is necessary to have another officer or supervisor present when conducting searches that are not routine and searches shall be carried out with the assistance of local law enforcement officers where possible.... If a search warrant has not been procured by local law enforcement, any seized evidence can only be used for revocation of supervision.
Id. at 45.
[3] Of course, the Florida legislature is free to follow Wisconsin and adopt a statutory scheme regulating probation supervision which requires that probationary searches be supported by "reasonable grounds."