768 So.2d 504 (2000)
Bryan JOHNSTON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3409.
District Court of Appeal of Florida, Fourth District.
August 30, 2000.
Rehearing Denied October 11, 2000.
*505 Richard L. Jorandby, Public Defender, and Jennifer L. Brooks, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrick W. Krechowski, Assistant Attorney General, Daytona Beach, for appellee.
SHAHOOD, J.
Appellant, Bryan Johnston, appeals his revocation of probation and judgment of conviction and sentence. Appellant alleges that (1) the marijuana found on his person was discovered as a result of a search incident to an unlawful arrest and (2) that the exclusionary rule barred the court's consideration of the marijuana at his probation revocation hearing. We disagree and affirm appellant's conviction and sentence holding the search to be lawful, and, that under Pennsylvania Board of Probation and Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), the exclusionary rule was not a bar to the admission of the marijuana at appellant's probation revocation hearing.
While on probation, appellant's probation officer filed an affidavit of violation of probation alleging three violations: (1) on July 5, 1998, appellant committed the offense of trespass; (2) appellant resisted arrest on July 5, 1998, by giving a false name and date of birth in order to conceal his true identity; and (3) appellant failed to file a full and truthful monthly report with his probation officer by answering "no" on the July 14, 1998 report "Have you been arrested or had any contact with a law enforcement officer during the past month?"
On August 18, 1998, an amended violation of probation was filed adding a fourth violation to the existing three violations. The probation officer alleged that on August 7, 1998, appellant had cannabis, a controlled substance, in his possession.
At the violation hearing, probation officer, Martin Bowers, testified that an affidavit of violation of probation was filed against appellant alleging trespass, resisting arrest without violence, and failure to file a full and truthful report. The officer explained that on July 15, 1998, he checked *506 the Broward County Sheriffs Office booking logs which listed people who had been arrested within the previous 24 hours. In reviewing the log, Bowers noticed the name "Bryan Francis Johnston" listed for the arrest of trespass and resisting arrest without violence. Eventually the three alleged violations were dismissed when it was discovered that appellant was not the individual arrested on July 5, 1998.
According to Bowers, when there is an outstanding warrant on a probationer who comes to the probation office, the probation officer must call for assistance from the local law enforcement agency. Because there was an active warrant outstanding on appellant as a result of the alleged probation violations, Bowers called for police assistance while appellant was at the probation office on August 7, 1998. Appellant was in the lobby of the probation office when Bowers escorted the police officer to the lobby to inform appellant that he was under arrest for violation of probation. Bowers and the officer escorted appellant to Bowers' office so that the officer could perform certain procedures, including an inventory search, prior to transporting appellant to the local police department. During the inventory search, marijuana was located on appellant's person. As a result, Bowers filed an amended affidavit adding another violation of probation for possession of cannabis.
The trial court rejected appellant's argument that the search was incident to an unlawful arrest. We agree and hold that a police officer acting in good faith and in response to a probation officer's request to effect an arrest in the probation officer's presence, has the authority to conduct a search of a probationer's person.
Section 948.06, Florida Statutes (1997), authorizes a probation officer to arrest a probationer without a warrant and to bring him before the court which entered the probation order, whenever there is a reasonable ground to believe that the probationer has violated his probation. Section 948.03(5)(a)(10), Florida Statutes (1997), imposes as a condition of appellant's probation that the probationer submit to a warrantless search by the probation officer of the probationer's or community controllee's person, residence, or vehicle.
In Grubbs v. State, 373 So.2d 905, 907 (Fla.1979), the supreme court recognized that a probationer does not "enjoy the same status as an ordinary citizen," but has not completely forfeited the protections of the Fourth Amendment. A warrantless search of a probationer's person or residence is valid and absolutely necessary to properly supervise probationers. See Lawson v. State, 751 So.2d 623, 624 (Fla. 4th DCA 1999)(citing Grubbs). Hence, the Grubbs court held that a warrantless search of a probationer's person or residence by a probation supervisor is valid to the extent that the evidence discovered in the search may be used in probation revocation proceedings. See id.
While the search of a probationer's person or residence by a probation supervisor without a warrant is a reasonable search necessary for the proper supervision of probationers, such general authority to law enforcement officials is not permissible under the search and seizure provisions of the Florida or United States Constitutions. See id. at 909.
In Soca v. State, 673 So.2d 24, 28 (Fla.1996), the supreme court reaffirmed Grubbs and held that the Grubbs rule gives the state considerable leeway in investigating and monitoring probationers. When the state believes that a probationer is engaging in criminal behavior and apprises the probation supervisor of this information, the probation supervisor may exercise his authority to search a probationer's person or residence for evidence that the probationer was violating the terms of his probation. See id. Should evidence be discovered by the probation officer, it can be used against the probationer in a probation revocation hearing. See id.
*507 Clearly, under Grubbs, a probation officer has the authority to search a probationer when he has reasonable grounds to believe that the probationer has violated the terms and conditions of his probation. A probation officer may act as any other law enforcement officer in exigent circumstances and search and seize articles incident to a lawful arrest. See Grubbs, 373 So.2d at 910. It necessarily follows that a police officer, at the behest of the probation officer, has the authority to arrest and then search a probationer. In this case, the probation officer requested the assistance of the Pompano Beach Police Department in arresting appellant at the probation office for violating his probation. After appellant was arrested, he was escorted to the probation officer's office by the officer and the probation officer and the officer performed an inventory search of appellant's property. At that time, the officer found a prescription bottle in appellant's bag containing marijuana.
Appellant also argues that the exclusionary rule bars the introduction of evidence illegally seized at probation revocation hearings. While this issue could be seen as moot since we hold that the search incident to appellant's arrest was lawful, we nevertheless write to acknowledge the Supreme Court's decision in Pennsylvania Board of Probation and Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), and its application to probation revocation hearings.
Under the Florida Constitution[1] and Scott, a probationer may not call upon the exclusionary rule during a probation revocation hearing to bar evidence of a search of his person by a police or probation officer[2] of the state. Under the holding of Scott, there is no difference between probation and parole. The Supreme Court's reasons for rejecting the exclusionary rule in parole revocation hearings are completely compatible with probation revocation hearings and may be summarized as follows:
1. The rule does not extend to proceedings other than criminal trials.
2. Application of the rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings.
3. Application of the rule in parole revocation proceedings would provide only minimal deterrence benefits; application of rule in the criminal trial context already provides significant deterrence of unconstitutional searches.
4. The use of the rule to preclude the admission of evidence establishing a violation of parole would hamper a State's ability to ensure compliance with the conditions of parole by permitting a parolee to avoid the consequences of his noncompliance.
5. The social costs of using the rule to allow a parolee to avoid the consequences of his violation are compounded by the fact that parolees, particularly those who have already committed parole violations, are more likely to commit future criminal offenses than are average citizens.
6. The rule is incompatible with the traditionally flexible, administrative procedures of parole revocation.
7. A parole revocation deprives the parolee not of the absolute liberty to which every citizen is entitled, but only *508 of the conditional liberty properly dependent on compliance with special parole restrictions; and, thus, the States have a wide latitude under the Constitution to structure their own revocation proceedings and may thus adopt informal, administrative parole revocation procedures in order to accommodate the large number of parole proceedings.
8. Application of the rule in parole revocation proceedings would significantly alter the informal and flexible administrative process and could require extensive litigation to determine whether particular evidence must be excluded.
9. The financial costs of applying the rule in parole revocation proceedings, with resulting adversarial proceedings, could reduce a State's incentive to extend parole in the first place, as one purpose of parole is to reduce the costs of criminal punishment while maintaining a degree of supervision over the parolee.
10. The fact that an officer performing a search knows that the subject of his search is a parolee does not provide any basis for applying the rule in parole revocation proceedings; the rule need not apply in every circumstance in which it might provide marginal deterrence.
11. Any additional deterrence from applying the rule in parole revocation proceedings if the searching officer knows of the parolee's status would be minimal; if the person conducting search is a police officer, the officer's focus is not upon ensuring compliance with parole conditions or obtaining evidence for introduction at administrative proceedings, but upon obtaining convictions of those who commit crimes.
12. Any additional deterrence benefits from applying the rule in parole revocation proceedings if the officer performing the search is a parole officer and knows of the parolee's status are limited; in contrast to police officers, parole agents are not engaged in the often competitive enterprise of ferreting out crime, and have as their primary concern whether their parolees should remain free on parole.
13. Although the supervisory relationship between parole officers and parolees does not prevent parole officers from ever violating the Fourth Amendment rights of their parolees, it does mean that the harsh deterrent of exclusion of evidence in parole revocation proceedings is unwarranted, given other deterrents such as departmental training and discipline and threat of damages actions.
14. Although in some instances parole officers may act like police officers and seek to uncover evidence of illegal activity, they are undoubtedly aware that any unconstitutionally seized evidence that could lead to indictment would be suppressed in the criminal trial and, thus, the application of the rule in parole revocation proceedings would have limited effect.
See Scott, 524 U.S. at 363-69, 118 S.Ct. 2014.
AFFIRMED.
DELL and FARMER, JJ., concur.
NOTES
[1] Art. I, § 12, Fla. Const. (1983) ("This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.").
[2] Nor do we see any basis to distinguish between searches by a police officer and a probation officer for purposes of refusing to apply the exclusionary rule to probation revocation proceedings.