EISNAUGLE, J.
The State of Florida appeals an order suppressing evidence obtained from a probationary search of Appellee's, Mark Leroy Phillips, Sr., cell phones, arguing that the search was reasonable pursuant to the Fourth Amendment. We agree and conclude that the search was reasonable because the government's interest in supervising Appellee while he was on probation for sex offenses against a child outweighed Appellee's privacy interest in his cell phone data. We therefore reverse the order of suppression.
The Probationary Search in this Case
In 1994, Appellee pled guilty to attempted sexual battery on a child, lewd and lascivious conduct upon a child, and sexual activity with a child by a person in familial or custodial authority. He was sentenced to ten years in prison followed by fifteen years of probation. The express terms of Appellee's probation included:
The Court retains custody over your person and authorizes any officer to search you at any time and search all vehicles and premises concerning which you have legal standing to give consent to search.
No contact with minor children without supervision of [an] adult.
You will promptly and truthfully answer all inquiries directed to you by the Court or Community Control/Probation Officer and allow the Officer to visit in your home, at your employment site or elsewhere ....
Although Appellee's terms of probation were expansive, they did not include an express authorization to search Appellee's cell phone data.[1]
After his release from prison, and while he was registered as a sexual offender, Appellee's probation officer visited his home and conducted a forensic download of his cell phones. The officer did not have a warrant to search electronic devices, nor did she have reasonable suspicion to believe Appellee had violated his probation or otherwise committed any crime.
A search of the cell phones' data revealed two online identifiers that Appellee had allegedly failed to report in violation of section 943.0435(4)(e), Florida Statutes (2017). As a result, the State charged Appellee with violating his probation and instituted *875 a new criminal proceeding charging Appellee with failure of a sex offender to report. The State later dropped the new charges and proceeded only on the violation of probation.
Appellee filed a motion to suppress evidence of the online identifiers, arguing inter alia , that the probationary search was unreasonable because he had a high privacy interest in the contents of his cell phones, the express conditions of his probation order did not authorize a search of any cell phone, and the search was not supported by reasonable suspicion. The trial court granted the motion, and this appeal follows.
The Fourth Amendment and Warrantless Searches
The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Amend. IV, U.S. Const.[2] "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is reasonableness.' " Riley v. California , 573 U.S. 373, 381-82, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (quoting Brigham City v. Stuart , 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) ). Therefore, courts generally employ a balancing test to determine the reasonableness of a warrantless search "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." United States v. Knights , 534 U.S. 112, 118-19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (quoting Wyoming v. Houghton , 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) ).[3]
Under the conformity clause of Florida's Constitution, Florida courts are bound by the Fourth Amendment jurisprudence of the United States Supreme Court. Soca v. State , 673 So.2d 24, 27 (Fla. 1996). "However, when the United States Supreme Court has not previously addressed a particular search and seizure issue which comes before us for review, we will look to our own precedent for guidance." Id. (citations omitted).
*876 While we have identified no Florida or United States Supreme Court case deciding the reasonableness of a suspicionless probationary search of cell phone data, we find that the Florida Supreme Court's analysis in Grubbs v. State , 373 So.2d 905 (Fla. 1979), and the United States Supreme Court's decisions in Knights and Riley , guide our analysis. These cases together establish that (1) a probationer has a substantially diminished expectation of privacy, and (2) there is a heightened privacy interest in a person's cell phone data.
A Probationer's Diminished Privacy Interest
In Grubbs , our supreme court held that a warrantless search of a probationer's person and residence, for use in probationary proceedings, is reasonable even where there is no express search condition in the order of probation. 373 So.2d at 907, 909-10.[4] In so doing, the court recognized a probationer's diminished privacy interests, stating that "the probationer is entitled to some but not all due process rights" and that a probationer's protection under the Fourth Amendment is "qualified." Id. at 907.
On the other hand, the court reasoned that the government has a significant interest in a probationary search. The court recognized that a probationer is necessarily under the supervision and control of the State, and that Florida law "inherently includes the duty of the probation supervisor to properly supervise the individual on probation to ensure compliance with the probation order." Id. at 908. According to the court, "it would be unreasonable to require a probation supervisor to supervise an individual on probation in the absence of such authority." Id. Importantly, the Grubbs court expressly declined to extend the use of evidence discovered during a warrantless probationary search to new criminal proceedings. Id. at 910.
In Knights , the United States Supreme Court confirmed that a probationer has a diminished privacy interest-even where evidence from a search conducted by law enforcement officers is used in new criminal proceedings. In that case, a detective searched the probationer's apartment after obtaining reasonable suspicion to believe that the probationer was guilty of vandalizing a power company's facilities. 534 U.S. at 115, 122 S.Ct. 587. The district court granted the probationer's motion to suppress the incriminating evidence found during the search, and the circuit court of appeals affirmed. Id. at 116, 122 S.Ct. 587.
The United States Supreme Court reversed, however, holding that "the warrantless search of [the probationer], supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." Id. at 122, 122 S.Ct. 587. In reaching its conclusion, the Court observed that "[i]nherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." Id. at 119, 122 S.Ct. 587 (citation and internal marks omitted).
On the other side of the balance, the Court focused on the government's interest in "apprehending violators of the criminal law" and reasoned that the government's interest in "protecting potential victims ... justifi[ed] focus on probationers in a way that it does not on the ordinary citizen." Id. at 121, 122 S.Ct. 587.
The Heightened Privacy Interest in Cell Phone Data
In Riley , the United States Supreme Court recognized that cell phone data carries with it a heightened privacy interest.
*877 573 U.S. at 393-97, 134 S.Ct. 2473. In that opinion, the Court reviewed two cases in which officers searched a cell phone without a warrant incident to arrest. Id. at 378-82, 134 S.Ct. 2473. In both cases, the search of the cell phone resulted in the discovery of evidence that implicated the defendants in other crimes, and both defendants moved to suppress the evidence discovered as a result of the searches. Id. The motions were denied. Id. at 379-81, 134 S.Ct. 2473.
On review, the Court concluded that the warrantless search of a cell phone incident to arrest is unreasonable. Id. at 401, 134 S.Ct. 2473.[5] In so doing, the Court observed that the government's interests supporting a search incident to arrest-avoiding harm to officers and destruction of evidence-are not implicated by cell phone data. Id. at 387-92, 134 S.Ct. 2473. Specifically, the Court noted that "[d]igital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape." Id. at 387, 134 S.Ct. 2473. Likewise, "once law enforcement officers have secured a cell phone, there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone." Id. at 388, 134 S.Ct. 2473.
On the other hand, the Court reasoned that the defendants had an especially strong privacy interest in cell phone data because "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." Id. at 393, 134 S.Ct. 2473. According to the Court, "[t]he sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet." Id. at 394, 134 S.Ct. 2473.
Moreover, a cell phone's internet "search and browsing history ... could reveal an individual's private interests or concerns," and its history of location information could "reconstruct someone's specific movements down to the minute." Id. at 395-96, 134 S.Ct. 2473. The Court observed that the search of an internet enabled cell phone could reach beyond the data stored on the phone and could "access data located elsewhere, at the tap of a screen." Id. at 397, 134 S.Ct. 2473. In sum, the Court concluded that "a cell phone search would typically expose to the government far more than the most exhaustive search of a house" because a cell phone "contains a broad array of private information never found in a home in any form." Id. at 396-97, 134 S.Ct. 2473.
The Totality of the Circumstances in this Case
Having considered the diminished privacy interest of a probationer and the heightened interest in cell phone data generally, we now turn to the balancing analysis in this case. We start our analysis from the premise that our supreme court has already decided that the search of a probationer's residence, even without an express search condition or individual suspicion, is reasonable where the results of the search are only used in probation proceedings.[6] Grubbs , 373 So.2d at 907, 909-10.
*878 That said, we are mindful that Appellee's interest in his cell phone is also high and that the privacy interests implicated by the search of a cell phone were not considered in Grubbs or Knights . In fact, given Riley 's statement that "a cell phone search would typically expose to the government far more than the most exhaustive search of a house," Appellee's interest is likely greater in his cell phone data than in his home.
Likewise, Grubbs did not consider the government's interest in supervising a sex offender on probation for offenses against a child. Therefore, our task is to place these unique considerations on the scales already prepared for us in Grubbs .
Appellee's Interest in his Cell Phone Data
We conclude that although a cell phone likely carries with it a greater privacy interest than even one's residence, it does not tip the scales much in Appellee's favor. Indeed, we observe that long before the advent of cell phones, a person's privacy interest in his or her residence was of central importance. Riley seems to acknowledge as much by its reference to Judge Learned Hand's statement that it is "a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." 573 U.S. at 396, 134 S.Ct. 2473 (citation omitted). While a cell phone may contain information that was previously unavailable even in one's home, in our view, a cell phone's data does not wholly overwhelm the privacy interest a person historically held in his or her residence.
Appellee's Underlying Offenses against a Child
The government's legitimate interest in searching a probationer's cell phone data is critical in this digital age, at least where the underlying offense is for sexual abuse of a minor. Where a child predator once searched for victims in person, the internet offers a much more effective, efficient, and dangerous tool for identifying minor victims.
Thus, we conclude that the seriousness of Appellee's underlying offenses against a child, combined with the new opportunities to find child victims presented by today's technology, drastically increased the government's interest in conducting a probationary search of Appellee's cell phone data. Compare United States v. King , 736 F.3d 805, 810 (9th Cir. 2013) (search reasonable where underlying offense was violent), with United States v. Lara , 815 F.3d 605, 610-14 (9th Cir. 2016) (search unreasonable where underlying offense not "serious and intimate"). In this context, as in Grubbs , we find it would be unreasonable to require a probation supervisor to supervise an individual on probation for sex offenses against a child in the absence of authority to search the probationer's cell phone. Cf. Grubbs , 373 So.2d at 908.
Conclusion
Considering the totality of the circumstances and balancing the interests on both sides, we hold that the suspicionless search of Appellee's cell phone data for use in probation proceedings was reasonable and did not violate the Fourth Amendment.
*879 We also certify the following question of great public importance to our supreme court:
DOES THE SEARCH OF A PROBATIONER'S CELL PHONE DATA BY A PROBATION OFFICER VIOLATE THE FOURTH AMENDMENT WHERE THERE WAS NO INDIVIDUALIZED SUSPICION FOR THE SEARCH AND THE PROBATIONARY SEARCH CONDITIONS, ALTHOUGH BROAD, DID NOT EXPRESSLY AUTHORIZE A SEARCH OF CELL PHONE DATA, BUT THE PROBATIONER IS A SEX OFFENDER, HIS UNDERLYING OFFENSES ARE FOR SEXUAL ABUSE OF A MINOR, AND THE RESULTS OF THE SEARCH ARE ONLY USED IN VIOLATION OF PROBATION PROCEEDINGS?
REVERSED and REMANDED for further proceedings; QUESTION CERTIFIED.
EVANDER, C.J., and LAMBERT, J., concur.

We note that cell phones were not internet enabled at the time the trial court initially rendered the terms of Appellee's probation.

Article I, Section 12, of the Florida Constitution similarly enshrines "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means." Art. I, § 12, Fla. Const.

A warrantless search is also reasonable "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " Griffin v. Wisconsin , 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (quoting New Jersey v. T.L.O. , 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring in judgment) ). This "special needs" analysis presents a separate test pursuant to which a search may be deemed reasonable. See United States v. Payne , 588 F. App'x 427, 431 (6th Cir. 2014) ("If a warrantless search is reasonable under either Knights or Griffin , it need not pass muster under the other."); United States v. Herndon , 501 F.3d 683, 688 (6th Cir. 2007) ("Grif [f ]in and Knights represent two distinct analytical approaches under which a warrantless probationer search may be excused."); United States v. Freeman , 479 F.3d 743, 746 (10th Cir. 2007) ("The Supreme Court has created two exceptions to the Fourth Amendment's warrant requirement in the context of parolee searches."). We evaluate the instant search pursuant to the general totality of the circumstances test in Knights because our supreme court has determined that Griffin 's analysis is not applicable to Florida's probationary system. See Soca v. State , 673 So.2d 24, 27 (Fla. 1996) ("[W]e reject the State's argument ... that Florida's statutory scheme regulating probation supervision ... is sufficiently analogous to the Wisconsin regulation at issue in Griffin [ ] so as to make the holding in Griffin controlling here.").

Our supreme court reaffirmed Grubbs in Soca , 673 So.2d at 28.

Unlike Knights and Grubbs , Riley did not involve a probationary search.

Although Grubbs did not expressly hold that a probationary search is reasonable in the absence of individualized suspicion, we conclude that it implicitly did so. Accord Harrell v. State , 162 So.3d 1128, 1132 (Fla. 4th DCA 2015) ("[T]he parties do not dispute that there was no reasonable suspicion to search; therefore, Grubbs is controlling."). Notably, Grubbs expressly required a traditional exception to the warrant requirement (for example, reasonable suspicion to support a Terry stop and frisk) if the evidence is used in new criminal proceedings. Grubbs , 373 So.2d at 907, 910. However, it referenced no such requirement when evidence is used solely in probation proceedings. Id. Regardless, we would conclude that the search in this case was reasonable based on a totality of the circumstances even if it were not already factored into the analysis in Grubbs . Cf. United States v. King , 736 F.3d 805 (9th Cir. 2013) (search reasonable despite lack of suspicion where probationer's underlying offense was violent).