DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANTONIO CRAIG,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2022-1728

[September 25, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin S. Fein, Judge; L.T. Case No. 16000310CF10A.

Carey Haughwout, Public Defender, and Gregory J. Morse, Special Assistant Public Defender of King | Morse, PLLC, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Richard C. Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

Appellant appeals his convictions and sentences for manslaughter and attempted aggravated battery raising several issues. We affirm on all issues and write only to discuss the trial court's denial of appellant's motion to suppress.[1] We find that the trial court correctly applied the inevitable discovery doctrine to this issue where there were alternate means utilized to obtain the evidence. As such, we affirm.

---

[1] Appellant also argues that the trial court erred by: (1) denying appellant's peremptory and cause challenges on a prospective female juror, (2) limiting voir dire questions about the use of derogatory language, (3) denying appellant's motion to suppress his statements, (4) denying appellant's motion to suppress physical evidence pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), (5) denying appellant's motion to sever and his motion in limine to exclude the nickname of the codefendant, (6) committing various sentencing errors, and (7) committing cumulative errors that denied appellant his right to a fair trial and due process of law.

Appellant and the codefendant were charged with first-degree murder of the passenger of a vehicle and attempted first-degree murder of the other passenger. Appellant and the codefendant were tried together.

The state alleged that appellant and the codefendant lured the driver of a vehicle and two passengers to a residential street under the guise that they were looking to purchase a firearm. The codefendant was given the first passenger's phone number to help facilitate the sale of the gun. The first passenger was using his cell phone to coordinate the transaction with the purchaser.

The driver drove the two passengers to the residential street in the driver's red Dodge Charger. The driver exited the car to facilitate the transaction while the passengers remained in the car. Either appellant or the codefendant approached the driver to examine the firearm, while the other man, who was wearing a bandana covering his face, pointed a gun at the vehicle and began shooting. The first passenger was shot and killed inside the car. The second passenger was shot and then ran away. The driver got in his car, drove up the road, and called 911.

The first passenger's phone was found inside the driver's car. The driver told law enforcement that they were using the first passenger's phone to coordinate the sale with the buyer. Law enforcement searched the first passenger's phone and determined that there were numerous incoming and outgoing calls to a specific phone number on the first passenger's phone just prior to the incident. The Broward Sheriff's Office ("BSO") conducted a records check of the phone number and identified appellant as being associated with the phone number. The records check provided police with appellant's name, photo, date of birth, and address. Police also obtained subscriber information from the cell phone provider associated with appellant's phone number, which provided police with the same address as the records check. After determining that the subscriber address matched the address from the records check, law enforcement headed towards the residence.

While law enforcement was headed to the residence, a sergeant was told to find the location of the cell phone associated with appellant. Before the sergeant searched for the phone, the sergeant already had what law enforcement believed to be appellant's address based on the records check and the subscriber information. The sergeant used a cell-site simulator to locate appellant's phone. The sergeant located appellant in front of the residence. The sergeant did not apprehend appellant. There were fugitive detectives already in the area ready to apprehend appellant. When the sergeant drove by the residence and saw appellant, the sergeant relayed

2

that information to the fugitive detectives. The sergeant said that by the time he gave the fugitive detectives the information, "they already knew the address" so the fugitive detectives were "coordinat[ing] on how they're going to approach and what they're going to do." The sergeant said the fugitive detectives "were probably a block or two away [from the residence] at that point." Law enforcement made contact with appellant, who went to the police station to give an interview.

Ultimately, a search warrant was obtained for the residence, and police recovered various physical evidence that was presented at trial, including a bandana and a firearm. The bandana matched the description of the bandana that was worn by the shooter. The state presented testimony that the firearm, which was recovered from the residence, could have fired the shot that killed the first passenger.

Appellant filed a motion to suppress evidence obtained through the use of a cell site simulator linked to his phone. Appellant argued that law enforcement "never sought nor obtained a warrant for use of a cell site simulator (i.e., Stingray, Triggerfish, etc.)." Appellant alleged that law enforcement used a cell site simulator to locate his cell phone, which took law enforcement to the address where appellant was located, as appellant had the cell phone in his possession. Appellant argued that the warrantless search of cell site location information ("CSLI") violated his Fourth Amendment rights.

The state responded that appellant's motion to suppress should be denied, based partially on the inevitable discovery doctrine. The state argued that law enforcement "knew the [appellant's] identity, his complete criminal background and had already confirmed his home address *before* it ever used a cell-site simulator in the instant matter." Further, the state argued that "[t]he search at issue led BSO to [appellant] but it is certainly sound reasoning to conclude that BSO would have inevitably discovered the evidence anyway because it had the same information from its routine investigation." Thus, the state argued that the trial court must deny appellant's motion to suppress because the state would have discovered the evidence at issue.

The trial court denied appellant's motion to suppress. The trial court found that law enforcement had used a cell site simulator to obtain the current location for appellant's phone. Further, the trial court noted that both the state and appellant agreed that law enforcement had not obtained a warrant authorizing the use of a cell site simulator. The trial court held that the use of a cell site simulator without a warrant is a constitutional violation; however, the trial court denied appellant's motion to suppress

3

based on the inevitable discovery doctrine. The trial court found that law enforcement was already in the process of travelling to the residence when law enforcement used a cell site simulator to obtain the current location of appellant's phone. Thus, the trial court concluded that law enforcement had not travelled to the residence based on information obtained from the illegal use of the cell site simulator. As such, the trial court denied appellant's motion to suppress.

Appellant was convicted of one count of manslaughter and one count of attempted aggravated battery. This appeal follows.

Appellant argues that the trial court erred by denying his motion to suppress evidence obtained pursuant to the warrantless use of a cell site locator. Specifically, appellant argues that the acquisition of his CSLI was a search under the Fourth Amendment. The state responds that the trial court did not err because the facts already possessed by the police would have led to the evidence obtained regardless of the CSLI.

"A trial court's ruling on a motion to suppress is subject to a mixed standard of review. An appellate court must defer to the trial court's findings of fact, but it reviews legal issues de novo." *State v. Martin*, 287 So. 3d 645, 647 (Fla. 4th DCA 2019) (citation omitted).

"Whether the Government employs its own surveillance technology . . . or leverages the technology of a wireless carrier, we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." *Carpenter v. United States*, 585 U.S. 296, 309-10 (2018). Thus, acquisition of CSLI data is a "search." *Id.* at 316. As such, "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Id.*; *Soca v. State*, 673 So. 2d 24, 27 (Fla. 1996) ("With the conformity clause amendment, we are bound to follow the interpretations of the United States Supreme Court with respect to the Fourth Amendment and provide to Florida citizens no greater protection than those interpretations."); *Tracey v. State*, 152 So. 3d 504, 526 (Fla. 2014) ("Because . . . no warrant based on probable cause authorized the use of Tracey's real time cell site location information to track him, the evidence obtained as a result of that search was subject to suppression.").

The trial court found that law enforcement did not obtain a warrant authorizing the use of a cell site simulator. This warrantless search of appellant's CSLI is a violation of his Fourth Amendment rights. However, under the inevitable discovery exception, "evidence obtained as the result of unconstitutional police procedure may still be admissible provided the

4

evidence would ultimately have been discovered by legal means." *Maulden v. State*, 617 So. 2d 298, 301 (Fla. 1993); *Nix v. Williams*, 467 U.S. 431, 447 (1984) ("[I]f the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings.").

We find that the trial court correctly applied the inevitable discovery doctrine in this case. Appellant's address, where appellant was ultimately found with his cell phone, was obtained without the use of CSLI. The first passenger's phone was recovered, and an inspection of the phone revealed that the last incoming and outgoing calls were made from and to a phone number which BSO was able to link to appellant. BSO obtained information on appellant, including his name, photo, and, most importantly, a home address. Law enforcement legally obtained the subscriber information from the phone service provider, which was the same address as BSO had obtained for appellant from its records check. Though CSLI was improperly used to locate appellant's phone, CSLI only confirmed to law enforcement that appellant's phone was present at the address, which law enforcement had already ascertained through lawful means, and law enforcement was already on its way to that address. BSO had also already obtained that address through the legally obtained cell phone subscriber information. The case was already "in such a posture that the facts already in the possession of the police would have led to this evidence notwithstanding the police misconduct." *Fitzpatrick v. State*, 900 So. 2d 495, 514 (Fla. 2005). Further, law enforcement obtained a lawful search warrant for the residence on the same day law enforcement eventually made contact with appellant at the same residence. Thus, the trial court properly applied the inevitable discovery doctrine to the evidence obtained by the officers.

In summary, we find that the trial court correctly applied the inevitable discovery doctrine to the evidence obtained by law enforcement. The evidence "would ultimately have been discovered by legal means," because officers had already obtained appellant's address through BSO records and subscriber information legally obtained from appellant's phone service provider. *Maulden*, 617 So. 2d at 301. As such, we affirm.

*Affirmed.*

WARNER and CIKLIN, JJ., concur.

*       *       *

*Not final until disposition of timely filed motion for rehearing.*